Oliver H. Booth et al., as Executors, etc., Respondents, *v.* The Baptist Church of Christ of Poughkeepsie et al., Respondents, Cornelia Van Kleeck et al., Appellants.

The will of V. directed his executors to purchase land and to erect thereon a suitable structure for an orphan asylum; they were also directed to procure the passage of an act by the legislature incorporating the asylum, and after the completion of the building, to convey said premises to the corporation, also to assign and transfer to it a sum specified for a permanent fund for its maintenance of the asylum. In a codicil, the testator stated that since making the will, he had purchased certain real estate specified, and he directed his executors to devote this property to the purposes of the asylum. In an action for the construction of the will, it appeared that about four months after the death of the testator, the executors procured the passage of an act incorporating the asylum, as directed in the will. *Held,* that the attempted gift was both executory and contingent, and the devisee and legatee not being in existence at the time of the death of the testator, the gifts were void as suspending the power of alienation for an indefinite period not measured by lives in being; that no trust in the executors was created and no trust estate vested in them, but they held the property simply as executors; that the duty of paying over the legacy was merely the duty of an executor and not the execution of a power; but, assuming that to some extent there was a special authority which affected the personal estate and could be treated as a power, and assuming that the asylum was to get its title to the real estate from the execution of a power of transfer given to the executors, and that the fee of the land and the title to the fund descended to the heirs and next of kin, subject to the execution of the power, this would not cure the objection or validate the provision.

A perpetuity cannot be created by means of a power in trust any more than by a direct limitation. (1 R. S. 737, §§ 128, 129.)

The will also gave a legacy to an incorporated church, "provided said church shall raise a sum sufficient, with this legacy," to pay off a mortgage and its other debts within two years after the testator's death; and it was further provided that "in case of failure to do this, then this legacy shall lapse and go into the residuum" of the testator's estate. *Held,* that the condition was a condition precedent to the vesting of the legacy; and that the bequest was invalid.

The will contained a residuary clause by which the residuary estate was given to said asylum "when incorporated," and to two other institutions named "equally, share and share alike." Following the residuary clause was this provision: "In case any of the gifts or devises hereinabove given shall be adjudged void or illegal for any reason, then I give and

Statement of case.

devise the property mentioned and described in such void or illegal gifts or devises to my executors hereinafter named, in trust, for them to carry out and accomplish the things and objects designed by me in such void and illegal gifts and devises." *Held,* that the provision quoted was illegal and ineffective as a devise or legacy; but that the testator's meaning was to carry over to his executors only such dispositions as utterly failed, and not those which, failing in one direction, were yet within the scope of the residuary clause; and so, that it was not restrictive of the residuary gift; that the void gifts fell into and became part of the residue; that the two beneficiaries named in the residuary clause, who had power to take, each took one-third of the residue thus increased; but that, as the gift of the other third to the asylum failed, that third was undisposed of by the will and passed to the heirs and next of kin of the testator.

The will gave legacies to certain charitable institutions upon condition that each should pay annuities of specified amounts, equal to the accruing interest, to certain persons for their lives; these legacies were directed to be paid in certain securities specified by the testator, and it was provided that, in case the securities should fail to realize the amount of the several annuities, then that the payment of any deficiencies should fall upon the residuary legatees. It was claimed that these bequests were invalid, because none of the corporations named could take without applying their property to uses not authorized by their charters. *Held,* untenable; that the gifts to the institutions were in effect only of the principal sums named, the interest and income being beqeathed to the annuitants; and that the corporations were not required to appropriate their own property to unauthorized purposes, but simply to pay over the income, which was not theirs, to the true owners.

The will gave a legacy of "$10,000 in 100 shares, par value $100 a share, of the capital stock of some good railroad or coal company, guaranteed " to be selected from the testator's securities. The testator then added, " among my papers will be found a memorandum of the various securities I have selected for the payment of the several legacies." Such a paper was found with the will; it set apart, among other things, to the beneficiary named, " $10,000 or 100 shares" of certain railroad stock named. *Held,* that the paper was of a testamentary nature and could not be taken as a part of the will to affect or modify its terms; and so, that the legacy was general, not specific.

*Shipman* v. *Rollins* (98 N. Y. 311); *Blanchard* v. *Blanchard* (4 Hun, 289; 70 N. Y. 615); *Burrill* v. *Boardman* (43 id. 254); *Inglis* v. *Sailors' Snug Harbour* (3 Pet. 99), distinguished.

(Argued March 16, 1891; decided April 14, 1891.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order

made May 14, 1890, which affirmed a judgment entered upon a decision of the court on trial at Special Term.

This action was brought to procure a judicial construction of the will and codicil of John Guy Vassar, deceased.

The clauses of the will and codicil in question are as follows:

" Having no lineal heirs, my desire and aim, in the disposition of my property, are to do the most good and to forward the cause of humanity."

" 7. I give to the Baptist Church of Poughkeepsie, situate in Mill street in the city of Poughkeepsie, the sum of ten thousand dollars, in ten one-thousand dollar bonds, towards paying the mortgage and other debts of said church, provided said church shall raise a sum sufficient, with this legacy, to pay off such mortgage and other debts of said church within two years of my decease; and in case of failure to do this, then this legacy shall lapse and go into the residuum of my estate."

" 14. I give to Vassar Brothers Home for Aged Men, seven thousand dollars, in seven one-thousand dollar five per cent long bonds, as its own, but upon the express condition that the said home pays the following annuities, viz.: One hundred and fifty dollars, annually, in half-yearly payments, to the Rev. Edward Van Kleeck, for and during the term of his life; one hundred and fifty dollars, annually, in half-yearly payments, to Cornelia Van Kleeck, for and during the term of her life, and fifty dollars, annually, to James Van Kleeck, in half-yearly payments, for and during the term of his natural life. The principal fund to go into and form part of the repair fund of said home, and the interest and income to be applied towards the payment of the repairs of said home, and in case the whole amount should not be needed for such purpose, then the excess to go into the maintenance fund of said home.

" I give to Vassar Brothers Home for Aged Men the sum of fifteen thousand dollars, in fifteen one-thousand dollars (sic) good first mortgage railroad long bonds, bearing six per cent interest, as its own, but upon the express condition that the said

home pays the following annuity, viz.: The sum of nine hundred dollars, annually, in half-yearly payments, to James Vassar Harbottle, for and during the joint lives of himself and his wife, Caroline Harbottle, and upon the death of either then to pay the said sum of nine hundred dollars, annually, in half-yearly payments, to the survivor for and during his or her life. The principal fund to go and belong to the maintenance fund of said home.

"16. I give to the said Vassar Brothers Home for Aged Men, the further sum of eighteen thousand dollars, in eighteen one-thousand dollar good railroad long bonds, bearing five per cent interest, as its own, but upon the express condition that the said home will pay the following annuity, viz.: The sum of nine hundred dollars, annually, in half-yearly payments, to my sister-in-law, Irene B. Vassar, widow of my dearly beloved deceased brother, Matthew Vassar, Jr., for and during the term of her life, should she remain his widow; if, however, she should marry, then and after her marriage, to pay to her, annually, the sum of two hundred and fifty dollars, in half-yearly payments, for and during the term of her life. The said principal fund to go to and belong to the maintenance fund of said home.

"17. I give to Vassar Brothers Hospital the sum of seventeen thousand dollars, in seventeen one-thousand dollar good railroad long bonds, bearing five per cent interest, as its own; but upon the express condition that the said hospital will pay the following annuity, viz.: The sum of eight hundred and fifty dollars annually in half-yearly payments, to my sister-in-law, Irene B. Vassar, widow of my dearly beloved deceased brother, Matthew Vassar, Jr., for and during the term of her life, should she remain his widow; if, however, she should marry, then, and after her marriage, to pay to her, annually, the sum of two hundred and fifty dollars, in half-yearly payments, for and during the term of her life. The said principal fund to go and belong to the maintenance fund of said hospital.

"18. I give to Vassar Brothers Institute the sum of ten thousand dollars, in one hundred shares, par value one hundred

dollars a share, of the capital stock of some good railroad or coal company, guaranteed, to be selected from my securities, as its own; but upon the express condition that the said institute will pay the following annuity, viz. : The sum of five hundred dollars, annually, in half-yearly payments, to my namesake, John Guy Vassar, 2nd, for and during the term of his life. The said principal fund to go to and belong to the repair, taxes and insurance fund of said institute only.

"Among my papers will be found a memorandum of the various securities I have selected for the payment of the several legacies given in the above fourteenth, fifteenth, sixteenth, seventeenth and eighteenth clauses of this my will, which my executors are directed to deliver as indicated. And the provisions in the said 14, 15, 16, 17 and 18 clauses are made for the purpose of insuring the payment of said several annuities; but if, for any cause, the securities selected by me for this purpose should fail to realize the amount of said several annuities, then I charge the payment of any and all deficiencies on my several residuary legatees under this my will equally, meaning and intending by this charge to make the payment of such annuities certain."

" 31. I direct my executors, within six months after my decease, if practicable, to purchase suitable grounds in the said city of Poughkeepsie for an orphan asylum, to be known and called the ' John Guy Vassar Orphan Asylum,' for poor legitimate orphan children, free of charge, born in the county of Dutchess, and open alike to all creeds and color, and free from all sectarian influence and control, trusting that it will be managed and conducted in a manner that will commend it to a Christian community. If grounds can be found with a suitable building thereon, then I prefer that my executors, all things considered, should give this the preference, and for the purchase of such grounds, and for repairing and adapting the building thereon, or as the case may be, for building a solid and substantial structure thereon, for heating, equipping, furnishing, fencing, grading, improving and ornamenting the grounds all complete for occupancy, I authorize my executors

to expend not to exceed the sum of eighty-one thousand dollars, and what may remain of said sum shall go into the endowment or maintenance fund of said asylum hereinafter provided.

" I direct my executors, as soon as practicable, to procure an act to be passed by the legislature of the state of New York, incorporating said asylum, under the name of 'John Guy Vassar Orphan Asylum,' with suitable powers, and as soon after the completion of said asylum building and fitting it for occupancy, as practicable, I direct my said executors to convey said premises to the said incorporation, absolutely; and I direct my said executors at the same time, or soon thereafter, to assign and transfer to the said 'John Guy Vassar Orphan Asylum,' one hundred thousand dollars, in my best railroad first-mortgage long date bonds, bearing seven per cent interest — and coal stock guaranteed, at par value, for a permanent fund for the maintenance of said asylum.

" I leave a written memorandum, which will accompany this, my will, designating the securities I have selected to be delivered by my executors, in discharge of the several legacies hereinabove given; and the said several beneficiaries are respectively authorized, when and as such securities become due and payable, to reinvest the proceeds in the United States and state government bonds, in first-class railroad first mortgage bonds, and on bond and mortgage.

" I give and devise all the rest and residue of my estate to the John Guy Vassar Orphan Asylum, when incorporated, the Vassar Brothers Hospital, and Vassar College, equally, share and share alike. All securities not now paying interest, I direct to be held for improvement, and not sacrificed; a list of which, with suggestions, will be found among my papers. And these securities in my residuary estate are to be passed over (sic) to the respective legatees at par value.

" 38. In case any of the gifts and devises hereinabove given shall be adjudged void or illegal, for any reasons, then I give and devise the property mentioned and described in such void or illegal gifts and devises to my executors hereinafter named, in trust, for them to carry out and accomplish the end and

objects designed by me in such void and illegal gifts and devises."

Clause of codicil:

"Second. Whereas, I have made provision in my said will for the purchase of suitable grounds for an orphan asylum, to be known and called the 'John Guy Vassar Orphan Asylum,' and whereas I have since purchased the 'College Hill' property, so called, it is my will and I direct my executors to devote said 'College Hill' property to the purposes of said orphan asylum, as in my said will provided."

The further facts, so far as material, are stated in the opinion.

*Henry M. Taylor* for Matthew Vassar, Helen M. Haight and others, appellants. The provisions and bequests to and for the John Guy Vassar Orphan Asylum in the thirty-first and thirty-seventh clauses of the will are null and void, because at the decease of the testator there was no such corporation in being, and because the time in which a charter was to be procured from the legislature is not limited upon a term of life or lives in being at the death of the testator, and there is an unlawful suspension of the absolute ownership of the personal property and of the power of alienation of the real estate. (*Cruikshank* v. *Home*, 113 N. Y. 337; *Leonard* v. *Burr*, 18 id. 107; *Dodge* v. *Pond*, 23 id. 69; *Beekman* v. *Bonsor*, Id. 316; *Rose* v. *Rose*, 4 Abb. Ct. App. Dec. 108; *White* v. *Howard*, 46 N. Y. 144–160; *Williams* v. *Williams*, 8 id. 536; *Levy* v. *Levy*, 33 id. 97; *Haynes* v. *Sherman*, 117 id. 437; *Phelps* v. *Pond*, 23 id. 69.) The incorporation of the asylum after the death of the testator had no effect upon the rights of the parties which became vested at the death of the testator. (*White* v. *Howard*, 46 N. Y. 167; *In re McGraw*, 111 id. 110.) If it is claimed that, under the thirty-eighth clause of the will, the executors, as trustees, should execute the trust without an incorporation, the answer is that it was plainly not the intent of the testator that they should so administer it. The testator intended an incorporated institution on College Hill, bearing the name of John Guy Vassar Orphan Asylum,

and nothing else. (*Burrill* v. *Boardman*, 43 N. Y. 257.)
The executors as trustees, cannot take and execute the trust,
because it is a trust not limited upon lives, and the Revised
Statutes as to perpetuities apply to such bequest. (3 R. S.
2176, 2193, §§ 14, 15, 128; *Holmes* v. *Mead*, 52 N. Y. 332;
*Holland* v. *Alcock*, 108 id. 312; *In re O'Hara*, 95 id. 417;
*Schettler* v. *Smith*, 41 id. 134; *Adams* v. *Perry*, 43 id. 497.)
The bequest in the 7th clause of the will to the Baptist church
of Poughkeepsie of $10,000, provided said church shall raise
a sum sufficient with such legacy to pay off the mortgage and
other debts of the church within two years after the testator's
decease, is invalid, because of the suspension of the absolute
title to said legacy for a term of years and for a term not
limited by life or lives. (*Williams* v. *Williams*, 8 N. Y.
536; *Schettler* v. *Smith*, 41 id. 328; *Haynes* v. *Sherman*, 117
id. 437; *Phelps* v. *Pond*, 33 id. 69; *Levy* v. *Levy*, 33 id. 97;
*Rose* v. *Rose*, 4 Abb. Ct. App. Dec. 108; *Beekman* v. *Bonsor*,
23 N. Y. 306; *Leonard* v. *Burr*, 18 id. 107.) The bequests
in the fourteenth, fifteenth, sixteenth, seventeenth and eigh-
teenth clauses of the will, upon the condition that the several
corporations pay certain annuities, are void. (Laws of 1882,
chap. 298; Laws of 1883, chap. 290.) None of the annuitants
and none of the purposes of the annuities, are of the class of
persons or purposes for which the corporation which is to
contract to pay it, is authorized to provide and apply its funds
with the possible exception of James Van Kleeck. (2 R. S.
[7th ed.] 1531, § 3; 2 Kent's Comm. 299; *Tracey* v. *Tall-
madge*, 14 N. Y. 178; *Genesee College* v. *Dodge*, 26 id. 213;
*Davis* v. *O. C. R. R. Co.*, 131 Mass. 258; *Attorney-General*
v. *T. G. E. R. R. Co.*, L. R. [5 App. Cas.] 473–478 : *Jennison*
v. *C. S. Bank*, 44 Hun, 412; *Alexander* v. *Cauldwell*, 83 N.
Y. 480; *Riker* v. *Leo*, 115 id. 93; *Wells* v. *Town of Salina*,
119 id. 280; *Chamberlain* v. *Chamberlain*, 3 Lans. 360;
43 N. Y. 435; *Tinkham* v. *E. R. R. Co.*, 53 Barb. 393;
*Livingstone* v. *Gordon*, 84 N. Y. 136.) As to bequests to
Vassar College, it is the law that a corporation limited by its
charter in its capacity to take and hold property to a certain

sum, or to a sum yielding a certain fixed revenue or income, cannot take or hold property in excess of the limitation, and all bequests and devises of property in excess of the limit are void, and the property so unlawfully devised or bequeathed vests in the heirs at law and next of kin, and they can raise the question. (*In re McGraw*, 111 N. Y. 66; *Chamberlain* v. *Chamberlain*, 43 id. 424.)   The court erred in holding that the income and revenue derived from the so-called trust funds of the college was not to be reckoned as income and revenue of the college under its charter, limiting it to a total revenue of $40,000 a year. (*Chamberlain* v. *Chamberlain*, 43 N. Y. 438; *In re McGraw*, 111 id. 86.)   It was manifest error that the court found that Vassar College could take under the will of the testator property, the income of which did not exceed $250,000, by reason of the act of the Legislature passed after the death of the testator, and the exceptions thereto are well taken. (*White* v. *Howard*, 46 N. Y. 160; *Cruikshank* v. *Home*, 113 id. 353; *In re McGraw*, 111 id. 110–112.)   The rate of interest, being established by law at 6 per cent, that within the intent and meaning of the statute limiting its income, it should be reckoned at that lawful rate.   That the statute means $40,000 a year, estimated at the lawful rate of interest. (*Chamberlain* v. *Chamberlain*, 43 N. Y. 439.)   The words "annual income" are not equivalent of "annual value." Property may have an annual value without any income. (*T. I., etc., Factory* v. *Corning*, 45 Barb. 231–247; *Betts* v. *Betts*, 4 Abb. [N. C.] 400, 401.)   It is the doctrine of this court that it will guard and give effect to statutes in restraint of gifts of property in mortmain, and will be astute to prevent their violation. (*Hillyer* v. *Miller*, 10 Penn. St. 326; *Chamberlain* v. *Chamberlain*, 43 N. Y. 439; *In re McGraw*, 111 N. Y. 107.)   The void bequests and devises go to the next of kin and heirs at law. (*Riker* v. *Cornwell*, 113 N. Y. 124; *In re Benson*, 96 id. 499; *Kerr* v. *Dougherty*, 79 id. 327, 349; *Floyd* v. *Carow*, 88 id. 560, 571; *White* v. *Howard*, 46 id. 169; *Beekman* v. *People*, 27 Barb. 281; 23 N. Y. 312; *Downing* v. *Marshall*, 23 id. 373; *Floyd* v. *Barker*, 1 Paige,

482; 2 Redf. on Wills, 119; *Skeymsher* v. *Northcote*, 1 Swanst. 570; *Beekman* v. *Bonsor*, 23 N. Y. 12.)

*Hannibal Smith* for John Harbottle and Mary Ann Huntington, appellants. The bequests to the John Guy Vassar Orphan Asylum are invalid. (1 R. S. [8th ed.] 723, § 14, 773, § 1.) The will and codicils are invalid as bequests *in presenti* to the John Guy Vassar Asylum, for the reason that the beneficiary had no existence at the time of the death of the testator. (*Sherwood* v. *A. B. Society*, 4 Abb. Ct. App. Dec. 227; *Owens* v. *Missionary Society*, 14 N. Y. 381; *White* v. *Howard*, 46 id. 144; *Hawley* v. *James,* 16 Wend. 61; *Leonard* v. *Burr*, 18 N. Y. 96; *Schettler* v. *Smith*, 41 id. 328; *Burrill* v. *Boardman*, 43 id. 254; *Rose* v. *Rose*, 4 Abb. Ct. App. Dec. 108; *Warner* v. *Durant*, 76 N. Y. 133; *Cruikshank* v. *Home*, 113 id. 337; *In re Mayor, etc.*, 55 Hun, 204; *Greenland* v. *Waddell*, 116 N. Y. 234.) The invalidity of the will and codicil as to this orphan asylum is not cured by reason of its incorporation subsequent to the death of the testator. (*White* v. *Howard*, 46 N. Y. 144; *Matter of McGraw*, 111 id. 66.) The reason for the invalidity of the will and codicil is not that the will attempts merely to provide for a beneficiary in the orphan asylum by legislative enactment; but the will does not provide that the beneficiary must be brought into existence within two lives in being. (*Schettler* v. *Smith*, 41 N. Y. 328.) There was no valid bequest to the John Guy Vassar Orphan Asylum on the theory that the will creates a valid special power in trust. (*Levy* v. *Levy*, 33 N. Y. 97; *Downing* v. *Marshall*, 1 Abb. Ct. App. Dec. 525; 23 N. Y. 366; *Rose* v. *Rose*, 4 Abb. Ct. App. Dec. 108; *Bascom* v. *Albertson*, 34 N. Y. 584; *Holland* v. *Alcock*, 108 id. 312; *Cruikshank* v. *Home*, 113 id. 337; *Newell* v. *Nichols*, 12 Hun, 604; 75 N. Y. 78; *Hutton* v. *Benkard*, 92 id. 295; 4 R. S. [8th ed.] 2451, 2545, §§ 3, 129; *Dempsey* v. *Tyler*, 3 Duer, 98; *Coster* v. *Lorillard*, 14 Wend. 302.) The bequest is not valid as a power. (Bolles on Suspension Power of Alienation, §§ 80, 81, 82, 83, 84, 89, 227; *Leonard* v. *Bell*, 1 T. &

C. 608; 58 N. Y. 676; *Phelps* v. *Pond*, 23 id. 69; *Yates* v.
*Yates*, 9 Barb. 324; *Bascom* v. *Albertson*, 34 N. Y. 584;
*King* v. *Rundle*, 15 Barb. 139; *Rose* v. *Rose*, 4 Abb. Ct.
App. Dec. 108; 1 R. S. [8th ed.] 2448, §§ 97, 100, 101;
Underhill on Trusts, 129; *Arnold* v. *Chapman*, 1 Ves. Sen.
108; *Addington* v. *Cann*, Barn. 130; *Springett* v. *Jennings*,
L. R. [10 Eq.] 488; 1 Sugd. on Powers, 178, § 3; *Bland* v.
*Bland*, 2 Cox, 349; *Marlborough* v. *Godolphin*, 1 Eden, 404;
Lewin on Trusts, 97, § 9; 1 Perry on Trusts, § 383.)   Vassar
College was limited in its right to receive under the will and
codicil an amount that would yield a yearly income of $15,000;
say the sum of $300,000, and it was not entitled to take all
bequeathed upon it by the testator.   (Laws of 1862, chap. 39;
*In re McGraw*, 111 N. Y. 66.)   The contention on the part
of the next of kin is that the bequest to the John Guy Vassar
Orphan Asylum both in the will and codicil are void, and to
Vassar College are void beyond an amount sufficient to make
the annual income of that college $40,000.   That the residuary
clause in paragraph thirty-seven is several and invalid to the
extent above indicated, and that Vassar Brothers Hospital take
one-third of the residue of the estate and Vassar College suf-
ficient thereof to raise its annual income to $40,000, and the
rest of this one-third and the whole bequest to John Guy
Vassar Orphan Asylum, and the specific bequests to the orphan
asylum are undisposed of, and the property real and personal
thus undisposed of belongs to the next of kin of the testator.
(*Floyd* v. *Parker*, 1 Paige, 480; *Skrymsher* v. *Northcote*, 1
Swanst. 572; *Bagwell* v. *Dry*, 1 P. Wms. 701; *Page* v. *Page*,
2 id. 489; *White* v. *Howard*, 52 Barb. 294; 46 N. Y. 144;
*Beekman* v. *Bonsor*, 23 id. 312; *Kerr* v. *Dougherty*, 79 id.
346; Schouler on Wills, § 519; 2 Jarman on Wills, 368–370;
3 id. 721–808; *Ford* v. *Ford*, 70 Wis. 19; *Bowen* v. *Johnson*,
6 Ind. 110.)

*Joseph Fettretch* for Caroline Vassar, administratrix, and
Charles G. Vassar, appellants.   The bequest to the Baptist
Church of Poughkeepsie is invalid.   (*Levy* v. *Levy*, 33 N. Y.

97; *Rose* v. *Rose,* 4 Abb. Ct. App. Dec. 108; *Williams* v. *Williams,* 8 N. Y. 536; *Schettler* v. *Smith,* 41 id. 328; *Phelps* v. *Pond,* 23 id. 69; *Beekman* v. *Bonsor,* Id. 306; *Haynes* v. *Sherman,* 117 id. 437; *Leonard* v. *Burr,* 18 id. 107; *Cruikshank* v. *Home,* 113 id. 337.) The bequest in the fourteenth, fifteenth, sixteenth, seventeenth and eighteenth clauses of the will, upon condition that certain annuities be paid by the several corporations therein named, are void. (*Palmer* v. *P. R. R. Co.,* 111 N. Y. 488; Perry on Trusts, § 429; *N. Bank* v. *Jones,* 95 N. Y. 123; *Tracy* v. *Tallmadge,* 14 id. 179; *Chamberlain* v. *Chamberlain,* 43 id. 435; *Riker* v. *Leo,* 115 id. 93; *Wells* v. *Town of Salina,* 119 id. 280; *Alexander* v. *Cauldwell,* 83 id. 480; Laws of 1883, chap. 290; *Bissell* v. *M. S., etc., R. R. Co.,* 22 id. 285; *Genesee College* v. *Dodge,* 26 id. 215; *Haynes* v. *Sherman,* 117 id. 437; *Rose* v. *Rose,* 4 Abb. Ct. App. Dec. 108; *Schettler* v. *Smith,* 41 N. Y. 328.) The bequest and devise to the John Guy Vassar Orphan Asylum are valid. (*Williams* v. *Williams,* 8 N. Y. 536; *Owens* v. *Missionary Society,* 14 id. 381; *Leonard* v. *Burr,* 18 id. 96; *Schettler* v. *Smith,* 41 id. 328; *Burrill* v. *Boardman,* 43 id. 254; *White* v. *Howard,* 46 id. 144; *Warner* v. *Durand,* 76 id. 133; *Cruikshank* v. *Home,* 113 id. 337; *Rose* v. *Rose,* 4 Abb. Ct. App. Dec. 108; *Greenland* v. *Waddell,* 116 N. Y. 234; *Haynes* v. *Sherman,* 117 id. 437.) The learned trial court speaks as though there was a trust in the executors to pay this legacy. Nowhere in the will is there any mention of such a trust, and no court will make a trust for a testator. The executor does not hold the property of the testator as trustee, though he has a power in trust to pay debts, general expenses, legacies, and to distribute, as directed by the will, to those entitled, and these are they whose interests vested at the death of the testator, though perhaps payment has been postponed until the happening of some event, but which event must be limited upon lives. (*Levy* v. *Levy,* 33 N. Y. 97; *Burrill* v. *Boardman,* 43 id. 254; *Schettler* v. *Smith,* 41 id. 328; *Shipman* v. *Rollins,* 98 id. 311.) The court below errs in intimating that there may be a power in trust to carry out

this and similar provisions.   (4 R. S. chap. 1, §§ 77, 78; *Levy*
v. *Levy*, 33 N. Y. 97; *Downing* v. *Marshall*, 23 id. 366;
*Rose* v. *Rose*, 4 Abb. Ct. App. Dec. 108; *Holland* v. *Alcock*,
108 N. Y. 312; *Cruikshank* v. *Home*, 13 id. 337; *Holmes* v.
*Mead*, 52 id. 348.)   The bequest to Vassar Brothers Hospital
of $200,000, the income to be expended for the benefit of
" suffering humanity," is invalid.   There must be a defined
beneficiary or one capable of being ascertained.   (*Prichard*
v. *Thompson*, 95 N. Y. 76; *Riker* v. *Leo*, 115 id. 93; *Hol-
land* v. *Alcock*, 108 id. 311.)   The income from funds claimed
to be held in trust for various purposes and to maintain the
professorships, scholarships, etc., is to be counted as part of the
income with which an institution should be charged in deter-
mining whether it has reached the limit of its charter.   (Laws
of 1840, chap. 318; Laws of 1841, chap. 261; *Chamberlain*
v. *Chamberlain*, 43 N. Y. 424; *In re McGraw*, 111 id. 85.)
It may be claimed by Vassar College that under the act of incor-
poration such part of the " investment " or " income " bearing
property as the college received under the will of Matthew
Vassar, the elder, is not to be included within the amount with
which the college is to be charged in ascertaining whether
it has reached the limit of $40,000 per annum.   This claim
cannot be sustained.   (Laws of 1861, chap. 2.)   Vassar
College should be charged with these funds, and with the
amount of the income thereof, at the death of John Guy
Vassar, to wit, $25,141.68, as a part of the $40,000 income or
revenue to which it is limited by its charter.   (*Chamberlain*
v. *Chamberlain*, 43 N. Y. 438, 439; *In re McGraw*, 111 id.
85, 86.)   The act of 1889, chapter 139, did not increase the
capacity of Vassar College to take, so far as the estate of John
Guy Vassar, deceased, is concerned.   (*In re McGraw*, 111
N. Y. 111; *White* v. *Howard*, 46 id. 167.)   In order to arrive
at the proper sum to be taken from any estate (for the purpose
of fixing the amount which a beneficiary, whose capacity to
take is limited in amount of income), the only fair rule to be
adopted is, that that amount which, invested at legal interest,
would produce the income, shall be taken.   (*Chamberlain* v.

*Chamberlain,* 3 Lans. 374; 43 N. Y. 439, 440.) The thirty-seventh clause of the will limited each of the institutions therein named to one-third of the residuary estate of the testator, not including the devises and bequests in said will which might be declared invalid and void. (*Hart* v. *Marks,* 4 Bradf. 161; *Betts* v. *Betts,* 4 Abb. [N. C.] 421; *White* v. *Howard,* 52 Barb. 307; 46 N. Y. 170; *Delafield* v. *Shipman,* 103 id. 468.) The testator in this case created a "residue of a residue," and this passed to the next of kin at once upon the death of John Guy Vassar. (*Beekman* v. *Bonsor,* 23 N. Y. 312; *Skrymsher* v. *Northcote,* 1 Swanst. 570; *Floyd* v. *Barker,* 1 Paige, 480; *Kerr* v. *Dougherty,* 79 N. Y. 346.) The only real residuary clause we have in the will before us is the thirty-eighth, for it is the ending of the testator's bequests, and the closing statement of his wishes in regard to his estate. (*Kerr* v. *Dougherty,* 79 N. Y. 346; *Chamberlain* v. *Chamberlain,* 43 id. 439.) A devise to a corporation which is forbidden to take (or forbidden to hold, if the word, under the circumstances of the case, is construed to a taking also), does not, therefore, give a title subject to the right of some superior to claim a forfeiture of the land; but if it be in violation of a statute the devise or bequest is void, and if no other valid disposition is made the estate descends to the heir. (*In re McGraw,* 111 N. Y. 94; *White* v. *Howard,* 46 id. 144.) The exception to the conclusion of law that Vassar College is empowered to take and hold from the estate of said John Guy Vassar, deceased, under his will, any amount of property, the yearly income of which shall not exceed $250,000, is well taken. (*White* v. *Howard,* 46 N. Y. 167; *In re McGraw,* 111 id. 111.) The bequests to Vassar Brothers Institute in the eighteenth clause of the will is not a specific bequest. (Williams on Ex. 338, 842; *Tifft* v. *Porter,* 3 N. Y. 516; *Brundage* v. *Brundage,* 60 id. 548.) The executors are not required by the terms of the will to deliver to the legatees the very securities mentioned in the written memoranda. (*Langdon* v. *Astor,* 16 N. Y. 9; *Williams* v. *Freeman,* 83 id. 569; *Lawrence* v. *Lindsay,* 86 id. 108.)

*Hackett & Williams* for Robert G. Vassar, appellant.    The bequests in the thirty-first and thirty-seventh clauses of the will are void, because at the decease of the testator there was no such corporation, and because the time in which a charter was to be secured from the legislature is not limited upon a term of life or lives in being, and consequently there is an unlawful suspension of the absolute ownership of the personal property, and of the power of alienation of the real estate. (*Cruikshank* v. *Home*, 113 N. Y. 337; *Dodge* v. *Pond*, 23 id. 69; *Rose* v. *Rose*, 4 Abb. Ct. App. Dec. 108; *Leonard* v. *Burr*, 18 N. Y. 107; *White* v. *Howard*, 46 id. 144–160; *Sherwood* v. *A. B. Society*, 1 Keyes, 361; *Beekman* v. *Bonsor*, 23 N. Y. 316; *Shipman* v. *Rollands*, 98 id. 311; *Burrill* v. *Boardman*, 43 id. 254; *Tilden* v. *Green*, 54 Hun, 232; *Levy* v. *Levy*, 33 N. Y. 97; *Haynes* v. *Sherman*, 117 id. 437; *In re McGraw*, 111 id. 110; *Bascom* v. *Albertson*, 34 id. 500; *Holmes* v. *Mead*, 52 id. 332; *Newell* v. *Nichols*, 75 id. 78; *Hutton* v. *Benkard*, 92 id. 295; *Hawley* v. *James*, 16 Wend. 120; *Yates* v. *Yates*, 9 Barb. 324; *Gott* v. *Cook*, 7 Paige, 540; *Holland* v. *Alcock*, 108 N. Y. 323.)    The void bequests and devises go to the next of kin. (*White* v. *Howard*, 36 N. Y. 169; *Beekman* v. *People*, 27 Barb. 281; 23 N. Y. 312; *Downing* v. *Marshall*, 23 id. 373; *Kerr* v. *Dougherty*, 79 N. Y. 349; *Atty.-Gen.* v. *Davies*, 9 Ves. Sr. 535; *Ricker* v. *Cornwall*, 113 N. Y. 124; Ward on Legacies, 32.)    The bequest in the seventh clause of the will of $10,000, provided the church should raise a sum sufficient with such legacy to pay off the mortgage and other debts of the church within two years after the testator's death, is invalid, because of the suspension of the absolute title to said legacy for a term of years, and for a term not limited by a life or lives.    Absolute ownership may be suspended, but only during the continuance of life.    (*Schettler* v. *Smith*, 41 N. Y. 328; *Rose* v. *Rose*, 4 Abb. Ct. App. Dec. 108; *Haynes* v. *Sherman*, 117 N. Y. 437; *Phelps* v. *Pond*, 33 id. 69; *Leonard* v. *Burr*, 18 id. 107; *Levy* v. *Levy*, 33 id. 97.)    A corporation cannot accept a legacy upon the condition that it must

apply its funds, independently of the legacy to purposes not embraced within its corporate powers and purposes. (2 R. S. [7th ed.] 1531, § 3; 2 Kent's Comm. 299; *Tracy* v. *Talmadge*, 14 N. Y. 178; *Genesee College* v. *Dodge*, 26 id. 213; *Davis* v. *O. C. R. R. Co.*, 131 Mass. 258; *Alexander* v. *Caldwell*, 83 N. Y. 480; *Riker* v. *Leo*, 115 id. 93; *Wells* v. *Town of Salina*, 119 id. 280; *Chamberlain* v. *Chamberlain*, 43 id. 435; *In re Howe*, 1 Paige, 214; *Currier* v. *Fanning*, 13 Hun, 458.) The corporation being limited by its charter to take and hold property, the yearly income or revenue of which should not exceed $40,000, cannot take or hold property which will yield anything in excess of the limit fixed by the charter. (*In re McGraw*, 111 N. Y. 68; *Chamberlain* v. *Chamberlain*, 43 id. 423.)

*Charles Herrick* for Vassar Brothers Institute, appellant. The legacy of $10,000 to Vassar Brothers Institute, burdened with the annuity of $500 to John Guy Vassar, 2d, is a valid bequest which Vassar Brothers Institute has power to take and hold as given. (*Gridley* v. *Gridley*, 24 N. Y. 130; *Livingston* v. *Gordon*, 84 id. 136; Perry on Trusts, § 44; 1 Lewin on Trusts, 31; Angell & Ames on Corp. § 168; Morawetz on Corp. [2d ed.] § 334; *Tinkham* v. *E. R. Co.*, 53 Barb. 393; *Curran* v. *Fanning*, 13 Hun, 458; *Sheldon* v. *Chappell*, 47 id. 50.) The legacies to Vassar Brothers Institute are specific and the trial court erred in not so deciding. (Schouler on Wills, § 281; *Jackson* v. *Babcock*, 11 Johns. 389; *Tonnele* v. *Hall*, 4 N. Y. 140; *Brown* v. *Clark*, 77 id. 369; *Newton* v. *S. F. Society*, 130 Mass. 91; *Baker's Appeal*, 107 Penn. St. 381; Lawson on Pres. Ev. 89, 261; 1 Redf. on Wills, 262, 264; *Phelps* v. *Robbins*, 40 Conn. 250; *Van Cortland* v. *Kip*, 1 Hill, 593; *Hosea* v. *Jackson*, 98 Mass. 65; *Webb* v. *Day*, 2 Den. 459; *In re O'Neil*, 91 N. Y. 516; 1 Jarman on Wills, 230, 231.)

*Walter Farrington* for First Baptist Church, respondent. Such construction must be given to the language of the will

as to effect the intent and object of the testator. (*Crosby* v. *Wendell*, 6 Paige, 548; *Sutherland* v. *Gessner*, 27 Hun, 282; *Pond* v. *Bergh*, 10 Paige, 140; *Carter* v. *Bloodgood*, 3 Sandf. Ch. 293; *In re Nanny*, 21 Wkly. Dig. 532.) Such construction will be given to the language as will make a legacy valid, when such construction is not clearly contrary to the intent of the testator, or necessarily in violation of some positive and well-established rule of law. (*Jackson* v. *Winne*, 7 Wend. 47; *Roe* v. *Vingut*, 117 N. Y. 204; *Patterson* v. *Ellis*, 11 Wend. 259; *Manice* v. *Manice*, 43 N. Y. 303; *Thompson* v. *Conway*, 23 Hun, 621; *McKinstry* v. *Sanders*, 2 T. & C. 181; 58 N. Y. 662; *Embury* v. *Sheldon*, 68 id. 227; 4 Kent's Comm. 204.) Such construction should be given to the language of the will as to prevent intestacy. (*Vernon* v. *Vernon*, 53 N. Y. 351.) The seventh clause of the will should be so construed as to make it say in substance: "I give to the Baptist Church of Poughkeepsie $10,000, towards paying the mortgage and other debts of the church; but, if the church shall not, within two years of my decease, raise a sum which, added to this legacy, shall be sufficient to pay such mortgage and other debts, this legacy shall lapse and go into the residuum of my estate." This bequest, with any reasonable construction of the language, is good and valid. (*Spofford* v. *Manning*, 6 Paige, 383; *Loder* v. *Hatfield*, 71 N. Y. 92; *Wanzer* v. *Durant*, 76 id. 134; *In re Mahan*, 98 id. 372; *Shipman* v. *Rollins*, Id. 311; *Caw* v. *Robinson*, 5 id. 125.) If this portion of the will must be regarded as invalid as a testamentary bequest, it may still be regarded as a proposal to the church, which, when accepted and acted upon, becomes a valid contract. (*DuBois* v. *Baker*, 30 N. Y. 355.)

*Frank Hasbrouck* for Vassar Orphan Asylum, respondent. In expounding and declaring the effect of wills, the intention of the testator is to be carried out if, and so far as, it can be done consistently with the rules of law. (*Everitt* v. *Everitt*, 29 N. Y. 79; *Vernon* v. *Vernon*, 53 id. 351; *Phillips* v. *Davies*, 92 id. 199; *Henderson* v. *Henderson*, 113 id. 1;

*Riker* v. *Leo*, 115 id. 93.)   Except by the terms of the thirty-
eighth clause of the will, which must be conceded to be illegal
and invalid, and may be ignored, unless to aid the determina-
tion of the question as to the intent of the testator, as far as
that clause may throw any light upon such intent, there is no
estate given, or attempted to be given, to the executors, as
trustees, or otherwise, nor to the orphan asylum itself by direct
devise.   This real property is not by terms, nor by implication,
devised by this will and codicil.   No trust term has been
created in this real estate.   The power of alienation of this
property is not suspended at all by this will and codicil.
(*Everitt* v. *Everitt*, 29 N. Y. 71; *Tucker* v. *Tucker*, 5 id.
408; *Downing* v. *Marshall*, 23 id. 366; *Post* v. *Hover*, 33 id.
593; *Robert* v. *Corning*, 89 id. 225; *Cooke* v. *Platt*, 98 id.
35; *Henderson* v. *Henderson*, 113 id. 1.)   The power given
by the will and codicil of John Guy Vassar, deceased, to his
executors to convey said College Hill property to said John
Guy Vassar Orphan Asylum, after the executors had procured
the incorporation of said asylum according to the provisions
and directions of the thirty-first clause of said will, is a special
power in trust.   (*Cutting* v. *Cutting*, 86 N. Y. 522; *Manice*
v. *Manice*, 43 id. 303; *Bruner* v. *Meigs*, 64 id. 506; *Tucker*
v. *Tucker*, 5 id. 408; *Downing* v. *Marshall*, 23 id. 366;
*Everitt* v. *Everitt*, 29 id. 39; *Hawley* v. *James*, 16 Wend. 61;
*Post* v. *Hover*, 33 N. Y. 593; *Cooke* v. *Platt*, 98 id. 35;
*Blanchard* v. *Blanchard*, 4 Hun, 287; *Henderson* v. *Hen-
derson*, 113 id. 1; *Leggett* v. *Hunter*, 19 N. Y. 445; *Vernon*
v. *Vernon*, 53 id. 351.)   The fact that the time for the con-
veyance of the College Hill property to the incorporated John
Guy Vassar Orphan Asylum is of indefinite length, not meas-
ured by lives, and that the act of conveyance must of neces-
sity, as well as by the terms of the creation of the power,
await the pleasure and action of the legislature in granting a
charter "with suitable powers" does not suspend the absolute
power of alienation.   The fee, subject to the exercise of the
power, is vested in the heirs at law of John Guy Vassar.
The power to convey to the orphan asylum is in the executors,

ready for exercise as soon as the appointee under the power comes into being and is ready and able to take. (*Taylor* v. *Morris*, 1 N. Y. 341; *Allen* v. *De Witt*, 3 id. 276; *Belmont* v. *O'Brien*, 12 id. 394; *Newton* v. *Bronson*, 13 id. 587; *Leggett* v. *Hunter*, 19 id. 445; *Smith* v. *Bowen*, 35 id. 83; *Russell* v. *Russell*, 36 id. 581; *Kinnier* v. *Rogers*, 42 id. 531; *Haight* v. *Brisbin*, 96 id. 132; *Coleman* v. *Beach*, 97 id. 545; *Konvalinka* v. *Schlegel*, 104 id. 125; *Horton* v. *McCoy*, 47 id. 21; *Skinner* v. *Quinn*, 43 id. 99; *Moncrief* v. *Ross*, 50 id. 431; *Hancox* v. *Meeker*, 95 id. 528; *Shipman* v. *Rollins*, 98 id. 311; *Meakings* v. *Cromwell*, 5 id. 136; *Phillips* v. *Davies*, 92 id. 199; *Parker* v. *Linden*, 113 id. 28; *Asche* v. *Asche*, Id. 232.) The personalty is subject to the power in trust. (*Cutting* v. *Cutting*, 86 N. Y. 522; *Hutton* v. *Benkard*, 92 id. 295.) Inasmuch as all the provisions made in the thirty-first clause of the will for the foundation of the orphan asylum relate to personal estate and are directions for the expenditure of money by the executors, and, as by the terms of the second clause of the codicil, the executors are directed "to devote said 'College Hill' property to the purposes of said orphan asylum, as in my said will provided," there results from the force of the language, and the expressed intention of the testator, an equitable conversion of the College Hill realty into personalty; if such a conversion be necessary to give effect to the testamentary intentions of John Guy Vassar. (*Manice* v. *Manice*, 43 N. Y. 372; *White* v. *Howard*, 46 id. 162; *Phelps* v. *Pond*, 23 id. 69; *Hoyt* v. *Hoyt*, 85 id. 142; *Lent* v. *Howard*, 89 id. 169; *Delafield* v. *Barlow*, 107 id. 535; *Byrnes* v. *Baer*, 86 id. 210; *Hetzel* v. *Barber*, 69 id. 1; *Prentice* v. *Janssen*, 79 id. 478; *Armstrong* v. *McKelvey*, 104 id. 179; *Parker* v. *Linden*, 113 id. 28.) The donation to the orphan asylum should be sustained as a bequest for a charitable use. (*Burrill* v. *Boardman*, 43 N. Y. 254; *Shipman* v. *Rollins*, 90 id. 311; *Holmes* v. *Mead*, 52 id. 332; *Inglis* v. *S. S. Harbor*, 3 Pet. 99.) The legal title of personal property of a testator is in his executors. (*Wager* v. *Wager*, 89 N. Y. 167; *Beekman* v. *Bonsor*, 23 N. Y. 306; *Tucker* v. *Tucker*, 5 id.

408 ; *Henderson* v. *Henderson,* 113 id. 1 ; Redf. on Executors, 446.)

*Homer A. Nelson* and *Frank B. Lown* for executors, respondents. The bequest of $10,000 to the Baptist Church of Poughkeepsie, situate in Mill street, in the city of Poughkeepsie is valid. (*Lefevre* v. *Lefevre,* 59 N. Y. 434; *Riker* v. *Leo,* 115 id. 93 ; *Vernon* v. *Vernon,* 53 id. 351 ; *Provost* v. *Calyer,* 62 id. 550 ; *Yawger* v. *Yawger,* 37 N. J. Eq. 218; *Given* v. *Hilton,* 95 N. S. 594; *Pell* v. *Mercer,* 14 R. I. 427 ; *Loder* v. *Hatfield,* 71 N. Y. 92 ; Redf. on Surrogates, 591.) The bequests to the defendant Vassar Brothers Home for Aged Men, contained in the fourteenth, fifteenth and sixteenth paragraphs of the will are legal and valid. (*Everitt* v. *Everitt,* 29 N. Y. 39 ; *Stevenson* v. *Leslie,* 70 id. 516 ; *Wells* v. *Wells,* 88 id. 333 ; *Bushwell* v. *Carpenter,* 92 id. 274 ; *In re Mahan,* 98 id. 376 ; *Hillyer* v. *VanDewater,* 31 N. Y. S. R. 671 ; *Livingston* v. *Gordon,* 84 N. Y. 136.) The fact that the orphan asylum was not incorporated at the time of testator's death will not of itself make the bequest void. (*Shipman* v. *Rollins,* 98 N. Y. 311 ; *Moore* v. *Littel,* 41 N. Y. 66 ; Code Civ. Pro. §§ 2722, 2723 ; *Warner* v. *Durant,* 76 N. Y. 133.) The duty imposed upon these executors may be legally executed, as a power, or a power in trust. (*Tucker* v. *Tucker,* 5 N. Y. 408 ; *Bliven* v. *Seymour,* 88 id. 477 ; *Craig* v. *Craig,* 3 Barb. Ch. 76 ; *Bradley* v. *Amidon,* 10 Paige, 235 ; *Tobias* v. *Ketchum,* 32 N. Y. 329 ; *Vernon* v. *Vernon,* 53 id. 351 ; *Morse* v. *Morse,* 85 id. 53 ; *Brewster* v. *Striker,* 2 id. 19 ; *Hotchkiss* v. *Elting,* 36 Barb. 38 ; *Downing* v. *Marshall,* 23 N. Y. 366; *Everitt* v. *Everitt,* 29 id. 39 ; *Hawley* v. *James,* 16 Wend. 61 ; *Smith* v. *Bowen,* 35 N. Y. 83 ; *Manice* v. *Manice,* 43 id. 303; *Bruner* v. *Meigs,* 64 id. 506 ; *Fish* v. *Coster,* 28 Hun, 64; 92 N. Y. 627 ; *Coleman* v. *Beach,* 97 id. 545 ; *Cook* v. *Platt,* 98 id. 35 ; *Henderson* v. *Henderson,* 113 id. 1.) The bequest made to the Vassar Brothers Institute is not a specific legacy. (Redf. on Surrogates [4th ed.], 587 ; *Tifft* v. *Porter,* 8 N. Y. 516 ; *Bevan* v. *Cooper,* 7 Hun, 117 ; 72 N. Y. 317 ; *Brundage* v. *Brundage,*

Statement of case.

60 id. 544.)   The provision of the will "among my papers will be found a memorandum of the various securities I have selected for the payment of the several legacies given in the above fourteenth, fifteenth, sixteenth, seventeenth and eighteenth clauses of this, my will, which my executors are directed to deliver as indicated," etc., does not make it the duty of the executors to deliver in payment of this legacy the precise securities mentioned in one of the six sheets of paper. (*Caulfield* v. *Sullivan*, 85 N. Y. 153; *Williams* v. *Freeman*, 83 id. 569; *Brown* v. *Clark*, 77 id. 370; *Lawrence* v. *Lindsay*, 68 id. 108; *Langdon* v. *Astor*, 16 id. 26.)

*Allison Butts* for Vassar Brothers Hospital, respondent. The bequest to Vassar Brothers Hospital is good and valid. (*Livingston* v. *Gorden*, 84 N. Y. 136; *Gifford* v. *Rising*, 51 Hun, 1; 3 N. Y. Supp. 392.)   It is clearly the intent of the testator to dispose of all his property.   The residuary clause is a general one and includes in its gift all legacies which are void or illegal and all property not perfectly disposed of.   (*Riker* v. *Cornwell*, 113 N. Y. 115; *In re Benson*, 96 id. 500.)   There is no restriction as to the amount of property this defendant may take and hold.   (Laws of 1882, chap. 298; *Sherwood* v. *A. B. Society*, 4 Abb. Ct. App. Dec. 227; *In re McGraw*, 111 N. Y. 84.)   The bequest in the twentieth section of the will is an absolute gift.   The direction is that such gift is to form a part of the maintenance fund of said hospital.   (*Wetmore* v. *Parker*, 52 N. Y. 458, 459; *Robert* v. *Corning*, 89 id. 241.)

*John P. H. Tallman* for Vassar Brothers Home for Aged Men, respondent.   The Vassar Brothers Home for Aged Men is a competent legatee and devisee.   (3 R. S. [8th ed.] 1922, 1923, §§ 2, 6; *Newton* v. *Stanley*, 28 N. Y. 61; Redf. on Surrogates, 556, 557, 558.)   The payment of the annuities is simply a duty charged upon the legatee, the home, which is an institution created by the testator and his brother, who selected from among their friends its trustees.   These trustees are competent, and are subject to the equity power of the court,

on application of the annuitants and otherwise. When a legatee accepts a legacy and enters into possession, he must perform its conditions, however burdensome. ( *Wheeler* v. *Lester*, 1 Bradf. 293 ; *Warner* v. *Durant*, 76 N. Y. 133.)

Finch, J. John Guy Vassar made his last will and testament, declaring his general purpose at the beginning of his dispositions in these words : " Having no lineal heirs my desire and aim in the disposition of my property are to do the most good, and to forward the cause of humanity." His collateral relatives, mostly cousins, and to the number of about fifteen, availing themselves of their legal right to warp his purposes and divert to their own use what he devoted to charity, have assailed all the substantial dispositions of the testator as illegal and invalid. The provisions for the benefit of Vassar College have in part been saved from the risks of the litigation by a compromise, and have been withdrawn from the peril to which they were originally exposed ; but enough of the dispositions remain to involve a very large portion of the estate, and to require of us a determination as to their construction and validity.

The testator attempted to give to the " John Guy Vassar Orphan Asylum " a large amount of real and personal property. When he made his will and at the date of his death no such institution had been incorporated or come into existence. To meet that difficulty the will directed that the executors, as soon as practicable, should procure from the legislature an act of incorporation under which the institution should be organized, and thereupon the property devised and bequeathed should be transferred to it. The executors obeyed the direction. Such an act was passed about four months after the testator's death, and the corporation at that time created claims to be entitled to receive his intended bounty. The collaterals object that the devise and bequest are void as suspending the power of alienation of real, and the ownership of personal property for an indefinite period, not measured by lives in being. The authorities in this court from *Leonard* v. *Burr* (18 N. Y.

107) to *Cruikshank* v. *Home for the Friendless* (113 id. 337), fully support the contention of the next of kin. They hold in substance that such suspension may be effected either by the creation of a trust which renders the property inalienable while the trust estate continues, or by creating a future estate by way of executory devise or contingent remainder. Of the latter class of cases it was said that " as it cannot be known in whom the future estate will ultimately vest, and as the person in whom it will so vest may not be in existence, no person can convey an absolute fee." Under the present will the attempted gift was both executory and contingent. The devisee and legatee was not in existence. The will contemplated its future creation, but by an independent authority, which neither the testator nor his executors could control, and which might for fifty years or forever refuse an act of incorporation. During all that period the power of alienation and the absolute ownership would be suspended, for no person could convey a perfect and absolute title.

Two efforts in this case have been made to obviate the difficulty and answer the objection; one by the Special Term, whose opinion was adopted by the General Term on appeal; and the other by the counsel for the orphan asylum on the argument at our bar. The learned judge at the Special Term maintained, as I understand his opinion, that upon the death of the testator the property went to the executors in trust to pay debts and funeral expenses, then to pay legacies, and finally to distribute; that the testator had not extended the time for distribution; that the legal title remained in the executors for the purposes of the trust until the time for distribution came; and that it then went to the orphan asylum, which, at that time, was incorporated and capable of taking. Without attempting to discover the exact doctrine intended to be expressed, it is at least obvious that no trust in the executors was created and no trust estate vested in them; that they held the property simply as executors, without title to the land or ownership of the legacies. In one sense their position was that of trustee because of their official agency, but it is a novel

suggestion that where no express trust has been created the executor nevertheless takes one by implication in order to pay debts and legacies and make distribution. We need not pursue the subject, however, since the counsel for the orphan asylum not only admits, but vigorously asserts, that the testator created no trust in the executors and vested in them no estate, and that they held simply in their official capacity and under the law. The Special Term opinion seems further to be founded upon an idea that the will postponed the vesting until the time of distribution, and so, the case is like *Shipman* v. *Rollins* (98 N. Y. 311). The will *did* postpone the vesting for some indefinite period of time, and that is the exact difficulty which we encounter. During that period the ownership of the fund bequeathed is in abeyance. It is not in the executors, of course; it is not given to the next of kin, but bequeathed away from them; they do not take it by descent, unless the bequest is void; the legatee had not come into existence; and so, if we assume the validity of the legacy, its ownership is left in abeyance for an indeterminate period not measured by lives. That it is measured by the time given the executors for the performance of official duty does not help the situation. Whatever the measure provided, the title to the land and the ownership of the fund is in abeyance; their vesting is postponed; there is a suspension not permissible because not within the statutory allowance. It is exactly in that respect that the present case fatally differs from *Shipman* v. *Rollins*, since there the vesting was postponed for a single life, and the court held that a bequest limited to the use of a corporation to be created within the period allowed for the vesting of future estates and interests is valid. The vesting here was put outside of the permitted period.

But the counsel for the orphan asylum presents for our consideration a different theory. He holds that there was no suspension at all for any time, because the fee of the land and the ownership of the fund devolved upon the heirs and next of kin, and subject to be divested by the execution of a power in the executors to convey to the orphan asylum. He argues that

the power unexecuted is not an estate, but amounts only to a lien, which does not suspend the power of alienation or the absolute ownership, and so, the title may go to the legatee, when incorporated through the execution of the power. But, so far as the personal property is concerned, I doubt if any special power remained when the will took effect. The provisions of that instrument which authorized the executors to purchase land for the asylum and expend money in repairs or a new construction were rendered needless by the testator's own act in purchasing the college hill property and fitting it up for use. What remained was simply the duty of paying over the legacies bequeathed at the proper time, and such payment was merely the duty of an executor and not at all the execution of a power. But if, to some extent, a special authority remained, which affected the personal estate, and could be treated as a power it is exposed to the same difficulty which, as we shall see, attends the power framed for the transfer of the real estate. That was not in terms specifically devised, and it may be that under the will and codicil read together the asylum was to get its title through the execution of a power of transfer given to the executors. Assuming that to be so, the power was, as the respondent's counsel describes it, a mere naked power to transfer the title. The law would execute it without a conveyance, and by either process it still remains that the will contemplated and planned a future and contingent estate in the corporation to be created which should vest at an indefinite future period not measured by lives. It is not lawful to create a perpetuity by means of a power in trust any more than by a direct limitation, and even on the learned counsel's theory one was created. Assume that the fee of the land and the title to the fund descended to the heirs and next of kin, and they held it subject to the execution of the power, does it at all follow that they could transfer an absolute fee in possession? Possibly they might be deemed to hold a defeasible title, a base or determinable fee, but that is very different from an absolute fee. They could not convey such an interest or title for they

did not have it. The case upon which the learned counsel relies on this branch of his argument is that of *Blanchard* v. *Blanchard* (4 Hun, 289), affirmed in this court without an opinion. (70 N. Y. 615.)˙ The power in that case was described as a mere lien or incumbrance which did not lessen or weaken the absolute fee of the holders of the residue. But the power there was simply a power of sale which might, indeed, change the form of the property, but not its ownership. The court held that on a sale the owners would have the proceeds just as they had possessed the land; that they could transfer the entire estate, whether real or changed by the power into personal, and used this language to describe the situation, viz.: " In the case before us the residuary devisees took an estate in fee which, notwithstanding the incumbrance of the power, is neither *defeasible* nor conditional, and they may alienate it at pleasure." Here the power is of a very different sort. It is one which makes the supposed estate in the heir both defeasible and conditional; which operates not merely to change the form of the property without touching the ownership, but takes away and destroys the ownership itself; which strips the heir and vests the estate elsewhere. Such a power is vastly more than a mere lien or incumbrance. It operates to create a future contingent estate in the beneficiary whenever the latter should become incorporated and be capable of taking, and creates an estate which, when referred back to the donor of the power, is a future and contingent estate suspending alienation and ownership until the contingency happens which enables the estate to vest. Sections 128 and 129 of the chapter regulating and defining powers bring them within the rules forbidding a perpetuity. The first requires us to compute the period during which the absolute power of alienation may be suspended by any instrument in execution of a power from the date of the creation of the power; and the second, that no estate or interest can be given to a person by an instrument in execution of a power which such person would not have been capable of taking under the instrument by which the power was granted. It

follows that if the testator, by a direct devise, could not have carried the estate to the devisee except by limiting the necessary suspension to not more than two lives, neither could he do so through the agency and intervention of a power. I do not see, therefore, that the devise and bequest to the orphan asylum can be saved by any of the theories framed for that purpose.

Its counsel cites at length in his brief two cases sustaining his contention. (*Burrill* v. *Boardman*, 43 N. Y. 254, and *Inglis* v. *Sailors' Snug Harbour*, 3 Peters, 99.) The first states the question to be decided thus: "Whether an executory bequest limited to the use of a corporation to be created *within the period allowed for the vesting of future estates and interests* is valid." And the doctrine stated in the other is that " a limitation contingent upon the competent exercise of legislative power, *within the period of the lawful suspension of the ownership of property*, cannot be said to be unlawful although the contemplated action of the legislature may not be in accordance with any existing law." I have found no case and no doctrine which would sustain the devise and bequest assailed. It must, therefore, be declared invalid.

What has been said renders inevitable a similar disposition of the bequest to the Baptist Church. The provision of the will for the benefit of that corporation is expressed thus: " I give to the Baptist Church of Poughkeepsie, situate in Mill street, in the city of Poughkeepsie, the sum of ten thousand dollars in ten one-thousand dollar bonds towards paying the mortgage and other debts of the church, provided said church shall raise a sum sufficient, with this legacy, to pay off such mortgage and other debts of said church within two years of my decease; and in case of failure to do this, then this legacy shall lapse and go into the residuum of my estate." If the condition which qualifies this bequest is a condition precedent and the contingency contemplated must happen before the legacy can vest, we have another instance of a perpetuity and another invalid bequest. In that view of the provision of the will the case is like *Rose* v. *Rose* (4 Abb. Ct. App. Dec. 108),

in which a legacy was directed to be paid to a charitable society whenever, within five years, an additional sum of three hundred thousand dollars should be raised for its purposes, and was deemed to have fallen under the ban of the statute. The result is resisted in the present case by raising a question of construction. We are asked to say that the legacy vested at the death of the testator, and that the condition imposed was both a condition subsequent and within the power of the legatee to perform through the action of its own members. In the *Rose* case it was decided that the gift did not vest at the death of the testator, and while the language used was not identical with that employed in the will before us, the difference is not favorable to the claim of the church. In the former case the expression was "whenever" within five years the sum should be raised, and the words here are "provided" that within two years the sum should be raised. There are no technical words which indicate the difference between conditions precedent and subsequent, and the question is always one of intention. (*Nicoll* v. *N. Y. & Erie R. R. Co.*, 12 N. Y. 130.) In the present case it is quite clear that the proviso qualified the vesting of the gift. The testator's purpose was not to give at all unless by the process the church debt could be effectually wiped out. He meant that his proposed legacy should serve as an inducement or stimulant to open the purses of the church members, and to withhold his liberality unless they manifested theirs. He makes it quite clear that there is to be no gift until his condition is fulfilled, for he treats the fund as belonging to his estate and subject to his absolute disposition if the condition is not performed. He provides that in such event the "legacy shall lapse and go into the residuum" of his estate. A lapsed legacy is one which has never vested or taken effect. It has been defined as "one which, originally valid, afterwards fails because the capacity or willingness of the donee to take has ceased to exist before he obtained a vested interest in the gift." (13 Am. & Eng. Encycl. of Law, 28.) The provision for a lapse is the reverse of a forfeiture. The words "shall go into the residuum" fur-

ther indicate the testator's understanding that until condition performed, and within the specified period, he could dispose of the fund as he pleased, and without resort to proceedings for a forfeiture. He perfectly understood and appreciated the vital difference between the two kinds of conditions and discriminated between them by the use of appropriate language. When, in another provision, he gave principal sums to a legatee upon conditions to be afterwards performed according to the terms of an existing contract, he fully comprehended that the gift was upon condition subsequent, and in giving it over for failure of performance, he said : "And in case the said terms and conditions are not kept and performed, then, on such breach and forfeiture, I give," etc. And so, drawing the distinction between a lapse in one case and a forfeiture in the other, he plainly distinguished between precedent and subsequent conditions. The gift to the church, therefore, was upon a condition precedent, did not vest at the date of the testator's death, but the ownership was left in abeyance awaiting the result of a contingency, and effected a suspension not measured by lives. We must, therefore, declare it invalid.

But the " cause of humanity " made one more struggle against the flock of collaterals, and shifted the controversy to the disposition of the funds involved in the defeated legacies. The will contains a residuary clause in these words: "I give and devise all the rest and residue of my estate to the John Guy Vassar Orphan Asylum when incorporated, the Vassar Brothers Hospital and Vassar College, equally, share and share -alike." This, on its face, is a general residuary clause. The three legatees took the residuum as tenants in common, each being entitled to an undivided one-third. The collaterals contend that the residuary legatee must be a *general* legatee to take anything that. does not pass by the will ; that the corporations could not become general residuary legatees unless the residue should be given to them as a *class ;* that the residue here was not given to them in that manner but severally and to each one-third ; and that the intention of the testator was to prevent void and lapsed legacies from falling at all into the residuum. To

establish this intention they rely upon the thirty-eighth clause of the will, which follows the residuary clause, and is in these words: " In case any of the gifts or devises hereinabove given shall be adjudged void or illegal for any reasons, then I give and devise the property mentioned and described in such void or illegal gifts and devises to my executors hereinafter named in trust for them to carry out and accomplish the end and objects designed by me in such void and illegal gifts and devises." Three things are to be said about this provision. It is conceded to be illegal and ineffective as a devise or legacy and that it carries nothing to the executors. If, nevertheless, it may be considered as disclosing the testator's intent, which is asserted on the part of the collaterals, and indicates an intention not to merge lapsed legacies in the residue, it indicates also a strong and decided intention not to dissipate them among the collaterals. But its reference is to the void devises and bequests " hereinabove " given. The residuary disposition is one of the devises and bequests above given, and I think the testator's meaning was to carry over to his executors only such dispositions as utterly failed; those which were entirely undisposed of; and not those which, failing in one direction, were yet within the scope of the residuary clause, and saved by it. Any other construction must set the two provisions at odds and convict the testator of antagonistic purposes. And so I think that the thirty-eighth clause is not restrictive of the real residuary gifts, and we may construe it as it reads. We know from the testator's express direction that one lapsed legacy, that to the church, was to go into the residue, and so may the others without any added violence to the terms of the will.

Now it is true that some expressions are found in *Kerr* v. *Dougherty* (79 N. Y. 349), which indicate that a legacy to several as tenants in common of a residue is not to them as a class, and does not make them general residuary legatees. That was said, however, relatively to the rights of the residuary legatees to a residue of a residue, and in a case where, practically, there was no residuary clause at all. The whole subject was at a later period considered in *Matter of Accounting of*

*Benson* (96 N. Y. 509). The clause there was: "All the rest, residue and remainder of my estate, both real and personal, whatsoever and wheresoever, whereof I shall die seized, possessed or entitled unto, I give, devise and bequeath as follows, to wit," two-fifths to his brother William, one-fifth to each of two nephews, and one-fifth in trust for his wife. We described that as an "absolutely general residuary clause," although there was no gift to a class, but severally to the legatees, and we held that all lapsed and void legacies fell into the residue and became part of it. And so we must hold in the present case. The legacy to the church and those to the asylum, whether special or otherwise, fell into the residue and increased its volume. To one-third of that residue, thus swollen by the void legacies, Vassar College is entitled; to another third the Vassar Brothers Hospital has lawful claim; but the remaining third must go the heirs and next of kin. This result follows because the residuary gift to the orphan asylum of one-third itself fails, and the rule appears to be settled that, where by such a failure there is produced a residue of a residue, it does not go in augmentation of the other several shares, but passes to the heirs and next of kin. In *Beekman* v. *Bonsor* (23 N. Y. 312), it was declared to be clear upon the authorities that a part of the residue, of which the disposition fails, will not accrue in augmentation of the remaining parts as a residue of a residue, but, instead of resuming the nature of residue, devolves as undisposed of. To the same effect are later cases. (*Kerr* v. *Dougherty*, *supra* ; *Floyd* v. *Carow*, 88 N. Y. 570.) As to one-third of the increased residue, the testator, therefore, died intestate, and it devolved according to the law.

Thus far we have been compelled to disagree with the courts below, but we come now to a class of bequests which those courts preserved, and as to which we are glad to be able to concur. The testator gave certain principal sums to the Home, the Hospital and the Institute, respectively, upon condition that each should pay annuities of specified amounts equal to the accruing interest to certain persons for their lives, and it is contended that these bequests are invalid because none of the

corporations can take without transcending their charters and applying their property not to the relief of the aged, or the advancement of learning, or the care of the sick, but to the personal benefit of persons not at all within the description of the corporate beneficiaries. Numerous cases are cited of corporate attempts to pass charter boundaries by contracts and conduct *ultra vires*, but none of which are applicable to the present case. Capacity to take the gifts did not require that the corporations should apply their own money or property to unauthorized purposes, for substantially and in effect the principal only was given them and the interest and income was bequeathed to the annuitants. The latter were tenants for life and the former remaindermen in one and the same fund, and the respective interests, however mingled in fact, were several and distinct in law. It is answered that, if the rate of interest falls, the annuities remaining unchanged, there will be a deficiency which the corporations will be compelled to supply from their own funds. Even that emergency the testator provided against. He selected out the securities intended to be given, describing them in an extrinsic memorandum, and then adds: " But if, for any cause, the securities selected by me for this purpose should fail to realize the amount of said several annuities, then I charge the payment of any and all deficiencies on my several residuary legatees under this my will, equally." In other words, the annuities in every event were to be paid out of funds by him provided and set apart for that purpose, and in no respect and to no extent out of the property of the corporations. That the Institute was also one of those residuary legatees, does not alter its situation, for, in case of a deficiency, it is still the money of the estate which supplies it, and to that extent reduces the residuary gift. It is very certain that the testator might have given the fund to a trustee in trust to pay the income to two annuitants for life, with remainder to the corporation, in which case the latter would have become equitable owner of the principal and the annuitants of the income. But a formal express trust was not necessary. The principal could be given directly to one and the income for life to

another, and, to whichever of the two custody of the principal was given, the choice would not alter the ownership, and equity would recognize the several rights, and protect one party from waste of the principal and secure to the other his full income. The corporations were thus not required to appropriate their own property to unauthorized purposes, but preserving the principal for themselves to pay over the income which was not theirs to the true owners. In doing that, they would simply be taking their part of the gift, and not parting with their own property. I do not feel the need of authorities to justify the validity of such action, but if one is needed, it will be found in *Matter of Howe* (1 Paige, 214).

A further question has been argued at some length and comes up on the appeal of the Vassar Institute which claims that certain legacies decided to be general are made specific by the terms of an extrinsic memorandum referred to in the will, and the sole question is as to the effect of the memorandum. One of the gifts was " of ten thousand dollars in one hundred shares par value one hundred dollars a share of the capital stock of some good railroad or coal company guaranteed, to be selected from my securities as its own." The testator then added : " Among my papers will be found a memorandum of the various securities I have selected for the payment of the several legacies." Such a paper was found preserved with the will. It was entitled in the testator's handwriting : " List of securities which I wish transferred to different institutions under my will of Feb'y '85. John Guy Vassar." The list set apart, among other things, to the Institute " $10,000 or 100 shares N. Y., Lackawanna & Western guaranteed R. R. stock a 5 pr. c. for John G. Vassar." The question arising is whether this memorandum is to have effect as an integral part of the will, and so shall convert what by that instrument is either a general or demonstrative legacy into a specific one ; and that involves the further inquiry whether the memorandum is a mere identification of the thing given, or is testamentary in its character. It is unquestionably the law of this state that an unattested paper which is of a testamentary nature

cannot be taken as a part of the will even though referred to by that instrument. (*Langdon* v. *Astor's Exrs.*, 16 N. Y. 26; *Williams* v. *Freeman*, 83 id. 569; *Matter of the Will of O'Neil*, 91 id. 523.) I am satisfied that this memorandum is testamentary in its character. By the will no specific securities were given as is fully conceded. The effect of the memorandum is more than an identification. If the legacy framed by the will had been specific and manifested a purpose to give some particular security or securities, and among these found in the assets there proved to be a larger number, so that doubt arose as to the specific securities intended to be given, an extrinsic memorandum referred to in the will to identify the thing given might be considered. But that is not the case here. The office of the paper, if it shall operate at all, is to give specifically what was not so given by the will; to change its terms in a material respect; to alter a bequest and modify the rights of the legatees. Such a paper, we think, cannot be received as a part of the will to affect and modify its terms, and change what was a general or possibly demonstrative legacy into a specific one.

Other questions raised by the will need not be discussed. We concur with the Special and General Terms as to all the dispositions of the will except so far as we have expressly disagreed. The result is that the judgment of the General Term should be modified by declaring the devise and bequest to the orphan asylum invalid, as also the bequest to the Baptist church herein referred to, and by adjudging that such void gifts fall into the residue and form part of it, but that the one-third of such residue given to the orphan asylum goes to the heirs and next of kin as in the case of intestacy, and as modified the General Term judgment should be affirmed.

I have given some serious reflection to the question of costs. We are required to allow them, if at all, upon equitable principles. The claims of the collaterals compelled this litigation. They put all the other parties upon the defensive and succeeding in some respects have failed in others and claimed more than belonged to them. What they wrest from the charities

is against the intention of the testator and in spite of his avowed purpose. What he did give effectually should not be lessened by the success of those whom he meant to exclude in the respects here at issue. And so I think that no costs should be awarded to the orphan asylum or to the Baptist church, but the costs of all other parties in all the courts should be paid out of that portion of the estate as to which the decedent died intestate and which devolves upon the heirs and next of kin.

Judgment should be entered accordingly.

All concur.

Judgment accordingly.