(18 Misc. Rep. 689.)

BIGELOW et al. v. TILDEN et al.

(Supreme Court, Special Term, New York County. December, 1896.)

1. WILLS—PERPETUITIES—TRUST FOR CHARITIES.
    A bequest in trust for a charity, specifying no time in which it is to be executed, measured by a life in being, violates the statute against perpetuities.

2. SAME—POWER OF APPOINTMENT—EXERCISE.
    There is a valid exercise of a power of appointment as to property given in trust to apply the income to the use of M. for life, and on her death to the use of L. for life, unless M. by her will make a different disposition thereof, by M. devising and bequeathing all her property to L., without referring to the power.

3. SAME—POWER OF TRUSTEES—CHANGE OF INVESTMENT.
    A will provided for trusts for different individuals, denominated "special trusts," and a trust described as "the general trust" to include the residuary estate. Some of the special trusts testator created by directing the trustees to invest certain amounts, and pay the income to the beneficiaries, and others by directing them to set aside a certain amount of certain railroad stocks and bonds, and pay the income to the beneficiaries. Held, that reference was had to the securities thus specially set aside in the exception to the power of sale contained in the article of the will providing "the trustees of the said special trusts are hereby authorized from time to time to change the investments hereby directed to be made for the use and benefit of specific persons, to sell the securities originally purchased for or set apart for such specific persons, and to purchase other securities in lieu thereof, except in the cases where the securities are herein designated and appropriated to a specific purpose"; this exception being a limitation on a preceding article, stating generally the powers of the trustees of the special trusts,—among others, power

"to sell in their discretion the securities and reinvest the proceeds"; and the implied power of sale contained in the directions in regard to trusts of specific bonds or stocks that after death of the beneficiaries the trustees pay over the proceeds of the stock or assign the stock, having reference only to a time after termination of the trusts.

4. SAME—TRANSFER FROM GENERAL TO SPECIFIC TRUSTS.

Power given trustees in a will creating special trusts, and attempting to create a general trust of the residue of the estate, to make good, out of the general estate, any loss to a special trust, "so long as the general trust * * * shall continue," cannot be exercised, the general trust being void, and testator being intestate as to such part of his estate.

5. SAME—SALE OF REAL ESTATE.

Power to sell real estate given trustees in the article of the will following that in which attempt is made to create a general trust for charities of the residue of the estate, which included real estate, applies only to such real estate, no intention that there should be sale of real estate included in the special trusts for individuals being shown in the articles which create them, or in the articles exclusively relating to the general powers to be exercised by the trustees of the special trusts; and the provision as to real estate in one of the special trusts being a direction to the trustees to allow testator's sister the use for life of a certain house, said house on her death to be applied to the use of his niece for the remainder of her life.

6. SAME—NATURE OF ESTATE.

Provision of a will that executors and trustees buy certain real estate, and apply the same to the use of testator's two nephews for life, on whom also a power of appointment by will as to the same is conferred, does not create an active trust in the executors and trustees in respect thereto during the lives of the beneficiaries, but gives the beneficiaries life estates as tenants in common, with cross remainders for life, contingent on the one dying first not making appointment as to an individual half, in which case the other can appoint as to the entire property.

Action by John Bigelow and others, executors of Samuel J. Tilden, deceased, against George H. Tilden and others.

Lewis Cass Ledyard, for plaintiffs.

Joseph H. Choate, for defendant Marie Celeste Stauffer.

George Bliss, for defendant Henrietta T. Blatchford.

Edwin Countryman, for defendant George H. Tilden and others.

Smith M. Weed, for defendant Laura P. Hazard.

Leopold Wallach, for defendant Adelaide E. Buchannan.

James N. Hunt, in support of the article of the will for a library at Yonkers.

BEEKMAN, J. This action is brought by the plaintiffs for the purpose of obtaining a construction of certain portions of the will of their testator concerning their duties as trustees, and also for the purpose of enabling them to make a final distribution of such of the estate as now remains in their hands. This will has already been before the court, and has been construed, but only with respect to the attempted disposition by the testator of his residuary estate. The questions which arose in that connection have been finally disposed of by the court of appeals, and are not open to discussion here. Tilden v. Green, 130 N. Y. 29, 28 N. E. 880.

The accounts of the plaintiffs have been substantially settled by an agreement entered into between them and the heirs at law and next of kin of the deceased, to whom the residuary estate has

passed pursuant to the judgment of the court declaring the invalidity of the clauses of the will relative thereto. Under the terms of the agreement, two funds were constituted in the hands of the executors,—one to provide for the payment of certain inheritance taxes which have now been discharged, leaving a surplus amounting to $4,566.92, for which the plaintiffs are liable to account; and the other described as the "contingent fund," amounting to $500,000, to be applied and used for certain purposes specified in the agreement, including, among other things, the carrying into effect of the thirty-third and thirty-fourth articles of said will in case the same or either of the same should be held valid in any appropriate action or proceeding, which articles are now before the court in this action for construction.

The complaint propounds certain questions for solution by the court, the determination of which the plaintiffs deem to be essential in order to enable them to close the estate, and also to properly execute and perform the special trusts which have been devolved upon them by the terms of the will. The first two call for a construction of the thirty-third and thirty-fourth articles of the will, with respect to the establishment of a library and free reading room at New Lebanon and at the city of Yonkers, respectively. The briefs which have been submitted upon the points involved are most instructive and elaborate. I do not think, however, that it is necessary for me to discuss the point as to whether the scheme of the testator in either case is sufficiently definite and certain to afford a basis for a judgment for the enforcement of the trusts which the testator has attempted to create. With respect to these matters, I think both provisions are open to the fatal objection that they violate the statute against perpetuities. No time is specified within which the trusts are to be executed, measured by any life in being, and the law is now well settled that in the case of charitable trusts such a limitation is indispensable to their validity. Booth v. Baptist Church, 126 N. Y. 215, 28 N. E. 238. These attempted dispositions are, therefore, void, and the plaintiffs rest under no duty with respect to them.

The next question upon which the judgment of the court is sought is as to whether the will of Mary B. Pelton, deceased, which purported to devise and bequeath all her property, real and personal, was a valid exercise in favor of the defendant Laura P. Hazard of a power of appointment given by the testator to her with respect to a certain trust fund of $50,000. Under the ninth article of the will the testator, among other things, directed his trustees to invest the sum of $50,000, and to apply the income thereof to the use of his sister, Mary B. Pelton, during her life, and upon her decease to the use of the defendant Laura P. Hazard, for life, unless, as he says, Mrs. Pelton "shall by her last will and testament have made a different disposition of the same, which she is hereby empowered to do." Mrs. Pelton died after the testator, leaving a last will and testament, in and by which she gave all of her property to Mrs. Hazard, under a clause which reads as follows: "(1) I give, devise, and bequeath all of my property,

of every name or nature, and whether real, personal, or mixed, to my granddaughter, Laura A. Pelton, wife of William A. Hazard." No other testamentary disposition of her property, or of any part thereof, was made by her, nor does the will contain any reference whatsoever to the power of appointment. This, however, was not essential to make her will effective as a valid exercise of the power. The law is now so well settled that such a bequest operates upon the property embraced in the power that any discussion of the question would be superfluous. Hutton v. Bankard, 92 N. Y. 295; Trust Co. v. Livingston, 133 N. Y. 125, 30 N. E. 724. She also had the right to designate Mrs. Hazard as the sole and absolute recipient of the fund in question. The provisions contained in the will in favor of the latter were in the alternative, and were to be operative only in the event of a default in the exercise of the power of appointment, which was conferred in the broadest possible terms. I therefore find that the power in question has been validly exercised in favor of the defendant Laura P. Hazard, and that she is entitled to have the principal of the said trust fund paid to her absolutely.

A similar question arises under the tenth article of testator's will, where, among other things, an investment of $25,000 is directed to be made and held by the plaintiffs in trust, to apply the income to the use of Lucy F. Tilden for life, and upon her decease to the use of the defendant Adelaide E. Buchannan for life, unless the said Lucy F. Tilden should have made a different disposition of the same, which the will empowered her to do. Here, as in the former case, the power was intended to apply to the principal of the trust fund thus created. Lucy F. Tilden died after the plaintiffs' testator, leaving a last will and testament, in which, after making certain bequests of specific articles, she disposes of all her residuary estate in the following words:

"Fifth. I give, devise, and bequeath to my said daughter Addie E. T. Buchannan. all the rest, residue, and remainder of all the estate, both real and personal, of which I may be seised, or to which I may at the time of my decease be entitled, wherever the same may be situated; and I request my said daughter, in her discretion, but do not direct her, to give to my said brother, Egbert H. Campbell. any articles or things that might be useful to him or to his daughter Lucy, and such as would be of little value to my said daughter."

The will closes with the appointment of Miss Buchannan as sole executrix thereof. It follows from what has already been said that there was a valid exercise of the power of appointment of the fund in question in favor of the defendant Adelaide E. Buchannan, and that she is entitled to have the same paid to her absolutely.

Another question arises under the will of Mr. Tilden, which the complaint states in the following language:

"Whether these plaintiffs have lawful power and authority, with or without the consent of the defendant Marie Celeste Stauffer, to sell the first mortgage 6 per cent. bonds of the International & Great Northern Railroad Company, and the first mortgage bonds of the Oregon Short-Line Railroad Company, which have been set apart as a special trust for the benefit of said defendant Marie Celeste Stauffer, in accordance with the twenty-third article of said will of Samuel J.

Tilden, deceased, for the purpose of changing the nature of the investment of the funds constituting said trust."

The article in question reads as follows:

"Twenty-Third. I direct my said executors and trustees to set apart $50,000 of first mortgage 6 per cent. International & Great Northern Railroad Company bonds, and $50,000 of the first mortgage bonds of the Oregon Short-Line Railway Company, guarantied by the Union Pacific Railway Company, as a special trust for the benefit of my friend, Miss Marie Celeste Stauffer, daughter of Isaac Stauffer, Esq., of New Orleans. The income of the said special trust shall be applied by the trustees thereof to the use of the said Marie Celeste Stauffer during her natural life, free from any interference or control of any husband she may have; and upon the decease of the said Marie Celeste Stauffer the trustees of the said special trust shall pay over the principal of the said bonds or assign the same to the devisees or heirs of the said Marie Celeste Stauffer."

Another question has been raised with respect to this same trust, not by the plaintiffs, but by the attorneys for Miss Stauffer, in the answer which they have interposed on her behalf, under which it is claimed, among other things, that it is the duty of the trustees to make provision out of the moneys in their hands for additions from time to time to the principal of the trust, to the end that it shall at all times be equal in value to the sum of $100,000, or to such an extent that the trust shall at all times yield an income to the beneficiary of 6 per cent. upon the sum of $100,000. The two questions will be considered together.

The testamentary scheme of the testator involved the creation of a number of separate trusts for different individuals, which he denominated "special trusts," and also the creation of what he describes as "the general trust," which was intended to include his entire residuary estate. It becomes necessary, to a proper understanding and solution of the questions in controversy, to enter upon an examination, to some extent at least, of the various special trusts, so called, which are found in the will. The first is that which is created under the ninth clause in favor of Mrs. Pelton, a sister of testator, and her granddaughter, Mrs. Hazard, to which some reference has already been made. This bequest took the form of a direction on the part of the testator to his executors and trustees to invest certain sums of money therein described. A precisely similar direction is given with respect to the constitution of the trusts in favor of Lucy F. Tilden, under the tenth clause of the will, which has already been referred to. Under the eleventh clause the executors and trustees are also directed to invest the sum of $50,000, and to apply the income of the same to the use of Susan G. Tilden, the widow of a brother of the testator, during her life, and upon her decease to apply such income to the use of his niece Henrietta A. Swan, during her natural life, unless the said Susan G. Tilden shall have exercised a power of appointment over the principal, which is expressly conferred upon her by the will; and in default of such an appointment, and upon the decease of the said Henrietta A. Swan, it is directed that the principal of the trust shall be paid over either to the issue of the said Henrietta A. Swan, or to such persons as she may appoint by her last will and testament. Under the seventeenth clause a sim-

ilar direction is given to the executors to set apart the sum of $75,-000, the income arising therefrom to be applied by them to the use of the defendant George H. Tilden, during his natural life, with certain limitations over upon his decease, to which it is unnecessary to refer. The eighteenth clause contains a precisely similar direction for the setting apart of a like sum of $75,000 as a special trust for the benefit of the defendant Samuel J. Tilden, Jr., under limitations similar to those contained in the preceding clause. The nineteenth and twentieth clauses of the will are the same mutatis mutandis. Each directs the executors and trustees to set apart the sum of $150,000, to be held upon certain trusts and limitations therein specified, one of said trusts being created for the benefit of the defendant Ruby S. Paine, and the other for the benefit of the defendant Susan G. Sabin. Under the twenty-second clause of the will the executors and trustees are also directed to set apart as a special trust the sum of $25,000, the income arising therefrom to be paid to the defendant Anna J. Gould during her natural life, and, in a certain contingency, a direction is given that the capital of the trust be increased to the sum of $100,000.

The special trusts thus briefly enumerated belong to a class distinguishable from another class, to which I shall presently refer, in that in each case a specific sum of money is set apart by the testator for the constitution of the trust, without any special direction to the executors and trustees with respect to the investment of the fund. That was a matter which he intended to commit entirely to the judgment of the trustees, and it was, therefore, their duty to invest such moneys upon securities of their own selection, within the limits permitted by law. There is, however, another class of special trusts contained in the will, where the testator himself has set apart specific securities, or has directed that the corpus of the trust shall consist of certain specific securities, the income from which the trustees are required to apply to the use of the selected beneficiaries during their respective lives. The special trust created for the benefit of Miss Stauffer is of this class, as are also the following, viz.: An additional trust, under the tenth clause of the will, for the benefit of Adelaide E. Buchannan, where the plaintiffs are directed to set apart $20,000 in first mortgage bonds of the Oregon Short-Line Railway Company, the income to be applied by them to her use during her life; a further trust, in the twelfth clause of the will, for the benefit of testator's niece Caroline B. Whittlesey, in the constitution of which the testator appropriates 100 shares of the stock of the Cleveland & Pittsburgh Railway Company, which he describes as "standing in my name as trustee, but for which she holds a power of attorney from me to collect the income thereof," and directs the trustees to apply the income thereof to her use during her life, and upon her decease to "pay over the proceeds of the said stock or assign the said stock to the heirs of the body" of the said Caroline B. Whittlesey, if she leave any, and, if she leave no such heirs, then to pay over or assign the same to such person as she may by her last will and testament direct. A somewhat similar provision in favor of the same

beneficiary is contained in the thirteenth clause of the will, to
which, however, I do not think it necessary to make further refer-
ence.    Another of these trusts is found in the fourteenth article of
the will in favor of the testator's niece Henrietta A. Swan, with re-
spect to another lot of 100 shares of the same kind of stock, which
is precisely similar in its recitals, directions, and provisions to the
trust created for the benefit of Caroline B. Whittlesey.

We are now in a position to consider certain general provisions
of the will dealing with the powers and functions of the trustees
in the administration of these various special trusts.    The twenty-
ninth article of the will provides as follows:

"Twenty-Ninth. The trustees of the said special trusts are hereby authorized
from time to time to change the investments hereby directed to be made for the
use and benefit of specific persons;  to sell the securities originally purchased for
or set apart for such specific persons, and to purchase other securities in lieu
thereof, except in the cases where the securities are herein designated and appro-
priated to a specific purpose."

The determination of the controversy which has arisen with re-
spect to the power of the trustees to sell the securities set apart for
the Stauffer trust and the other trusts which have been similarly
constituted, depends upon the solution of the question whether the
limitation upon the power of the trustees contained in the above
exception is operative with respect to such trusts.    It will be ob-
served that the entire article is, in terms, limited to the special
trusts, as distinguished from the "general trust," as the testator
describes it, to which reference has already been made;  and it is,
therefore, among them, and among them alone, that we must seek
for the cases which the testator intended to except from the oper-
ation of the powers which he conferred upon the trustees under
this article of his will.    A careful examination of these trusts,
and of the whole will, leads inevitably to the conclusion that the
object of the exception was to preserve the subject-matter of the
trust in all cases where the testator himself had defined its char-
acter, and had specified the securities of which it should consist,
intact and unchanged during the continuance of such trust.    If such
was not his meaning, I am unable to find in the will any other rea-
son for the existence of this exception, or any other case to which
it can be applied.    Attention has already been called to the fact,
which becomes of some importance in this connection, that these
special trusts are of two classes,—one where the testator has set
apart a certain sum of money which he directs his trustees to in-
vest, without requiring such investment to be of any specific char-
acter;  the other, where, as in the Stauffer case, he has directed his
executors and trustees to set apart from his general estate certain
designated securities, upon which the trust and all dependent lim-
itations are specifically impressed.    Bearing this distinction in
mind, it becomes very apparent that the object of the twenty-ninth
clause was to authorize a change of investment from time to time
by the trustees in all cases where, from the nature of the bequest,
it became the duty of the trustees to exercise their discretion in
constituting the corpus of the trust estate.    In all such cases it was

the wish of the testator, which he has, I think, quite clearly expressed, that such trustees should have the power from time to time, in the exercise of their discretion, to change such investments. They had themselves chosen the investments in the first instance, and there would, therefore, seem to be no reason whatsoever for imposing any limitations upon the exercise of their judgment with respect to changes in such investments, if considered advisable, during the continuance of the trust, and it was for the purpose of expressing such an intention and conferring such a power that the article in the will under examination was inserted.  But the intention of the testator is equally manifest that where he himself had indicated the securities which should constitute the subject-matter of the fund, his choice and positive direction should not be subject to any modification by his trustees, but that the specific property to which he attached the trust should constitute its permanent form and embodiment.  He had been largely concerned in the management and operation of railroads, and had been a large investor in railroad securities.  It may be assumed, therefore, that he had an intimate knowledge of the present and prospective values of the securities which he mentions in his will, and that his motive in setting apart certain specific railway stocks and bonds for the purposes of some of these trusts was partly to save his estate from what he may have considered would be a sacrifice of the securities if sold in course of administration, and partly to give to a certain class of his beneficiaries the benefit of a large increase in their value which, in his judgment, might reasonably be expected to take place during the continuance of the trusts.  But it is not necessary to seek a reason for the exception which is grafted upon this article of the will, although it may be an interesting subject for speculation.  The terms of the exception are explicit, and there is no reasonable foundation for any claim that it does not apply to the trust in question.

It is claimed, however, that under such a construction of this article of the will effect cannot be given to the eighth article, which reads as follows:

"Eighth. My said executors and trustees are directed to constitute the trusts for specific persons hereinafter more particularly described and defined.  My said executors and trustees shall be trustees of the special trusts by them so constituted, but the said trusts shall be distinct and separate from the general trust under this instrument.  In their capacity as trustees of trusts for specific persons they shall have power to manage the several trusts; to collect the income thereof, and to apply the same as herein directed; to sell in their discretion the securities, and to reinvest the proceeds thereof."

The contention is that the power to sell thus expressed is broadly conferred upon the trustees in a single clause under which the testator intended to express the general powers of the trustees with respect to all of the special trusts which he was about to create, and that no distinction upon any reasonable ground can, therefore, be made between them with respect to the applicability of this provision.  Had this been the only provision contained in the will upon the subject, doubtless the claim would be tenable, but it is a cardinal rule of construction that effect, if possible, must be given to every

43 N.Y.S.—55

portion of a will, and that, where construction is necessary, the intent of the testator is to be gathered from a consideration of all that is contained within the four corners of the instrument. There is nothing contained in the eighth article which in terms contradicts the exception that we have found to exist in the twenty-ninth article. The testator doubtless thought it expedient that he should give a more specific expression to his meaning with respect to the power in question, and that he should guard against a construction which would be justified by the very general statements contained in the eighth article. The twenty-ninth article was the outcome of that purpose. It must be read in connection with the other, and, when so read, the intention of the testator becomes apparent, and a harmonious construction is obtained which no one can doubt represents his actual intention.

I have not overlooked the provisions of the thirty-eighth article, which enumerates certain powers that the testator further intended to confer upon the plaintiffs, including authority to dispose of his real estate "and other property bequeathed to them." I shall have occasion to refer to this article later in another connection. It is sufficient for me to say here that it was intended, in my opinion, mainly to authorize the executors and trustees to exercise the power referred to with respect to testator's general estate, and in connection with the general trust which he attempted to create in his residuary estate. This only remained to be done, the powers with respect to the management of the special trusts having already been completely provided for, as we have seen, in the twenty-ninth article, which was exclusively devoted to that subject. This construction seems to accord with the general plan and intent of the testator, and should, therefore, be preferred to one which can be established only by rejecting a provision for repugnancy.

It may also be urged against this construction that it is one which the court should not adopt, if any other is possible, by reason of the risk of depletion to which a trust estate is at all times exposed where the trustees are committed to the retention of securities that are subject to fluctuations in value, and to all the hazards to which railroad properties are exposed; and that, while a testator may authorize a trustee to invest in any form of security, the general policy of the law of this state is that such investments should be confined within certain specified limits, which do not include securities of the character designated in the will. The answer to this seems to be that the testator had this in mind, and provided, or thought that he had adequately provided, for any such contingency; for by the terms of the twenty-fifth article it is provided that where any special trust should fail in whole or in part by depreciation of securities, the same should be made good in certain ways which will be hereafter referred to in another connection. We thus find, upon consideration of the whole will, a perfectly definite scheme in regard to these special trusts. Where no direction is given by the testator with respect to the manner of investment, such investments are to be made by the trustees themselves, in the exercise of their discretion, with the associated right.

to change the same from time to time. Where the securities which are to constitute the corpus of the trust estate are in terms specified and set apart by the testator himself, they are to remain unchanged during the continuance of the trust; and because, by reason of this condition of permanence, the trust itself might, in certain contingencies, fail, in whole or in part, the trust fund was to be maintained intact by supplying such deficiency from other portions of the testator's estate. It will be observed in this connection that in all, or nearly all, of these trusts with respect to specific property, where final disposition is made of the trust fund after the termination of the trust, the limitation is made in the shape of a direction to the trustees either to pay over the proceeds of the said stock or assign the stock, or to pay over the principal of the bonds or assign the same, to the ultimate legatees, the latter being the form that this provision takes in the case of the Stauffer trust. I think the plain meaning of this is that upon the termination of the trusts a discretion should be vested in the trustees of either turning the property over in specie to the ultimate legatees, or of turning the same into money, and dividing it in that form. This, I think, is not only the obvious construction, but it is one which is in complete harmony with the provision of the will that prohibits the sale of such securities during the life of the trust. I am therefore of the opinion that the plaintiffs, as trustees of the special trust contained in the twenty-third clause of the will in favor of Marie Celeste Stauffer, have no lawful power or authority, either with or without the consent of the beneficiary, to sell the securities therein named, and which now constitute the principal of said trust fund, for the purpose of changing the nature of the investment. I do not determine, however, that, if an emergency should arise which should seriously threaten the integrity of the trust fund, the trustees might not then sell such securities under the sanction and direction of this court. It may be that a power under such circumstances so to deal with the trust property may be held to arise as matter of law out of the necessities of the case. The case of Trust Co. v. Roche, 116 N. Y. 120, 22 N. E. 265, shows how very far the court of appeals has gone towards establishing such a principle. The conclusion to which I have thus come applies to all of the special trusts in specific securities created under the will.

I shall now take up the consideration of the claim made on behalf of the defendant Marie Celeste Stauffer that the general estate of the testator is subject to a continuing charge in her favor to make good her trust fund, both as to principal and interest, in the event of any failure thereof in whole or in part by depreciation of securities. This claim is based on the twenty-fifth article of the will, under which the testator directs his trustees, in case any special trust constituted under his will shall fail in whole or in part by depreciation of securities, to make the same good out of his general estate, "so long as the general trust to my executors and trustees shall continue." In case any portion of the general estate

is conveyed by his executors and trustees to the "Tilden trust," or
is invested by them in any trust or trusts for charitable purposes,
they are charged to do so on the express condition that the grantee
or grantees shall undertake to fulfill this obligation, provided that
the corporation shall be authorized by law to accept the gift upon
such terms. It becomes necessary, therefore, to consider what the
situation of the general estate and general trust may be. The gen-
eral trust is set forth in the thirty-ninth article of the will, under
which the testator in terms devises and bequeaths his residuary es-
tate to his executors and trustees, "to possess, hold, manage, and
take care of the same during a period not exceeding two lives in
being,—that is to say, the lives of my niece Ruby S. Tilden, and my
grandniece Susie Whittlesey, and until the decease of the survivor
of the said two persons,—and, after deducting all necessary and
proper expenses, to apply the same, and the proceeds thereof, to
the objects and purposes mentioned in this, my will." What those
objects and purposes were which are thus referred to will be found
in the thirty-fifth article, under which the testator intended to ex-
press the beneficial purposes to which he proposed to devote all
of his residuary estate. He first requests his executors and trus-
tees to obtain as speedily as possible from the legislature an act to
incorporate an institution to be known as the "Tilden Trust," with
capacity to establish and maintain a free library and reading room
in the city of New York, and to promote such scientific and educa-
tional objects as the executors and trustees might more particular-
ly designate. In case such incorporation took place during the
period which measured the duration of the general trust, the exec-
utors and trustees were authorized to convey the residuary estate,
or so much thereof as they might deem expedient, to such corpo-
ration. If, however, no such corporation should be formed during
the life of the general trust, or if the executors and trustees should
deem it inexpedient to make any such conveyance in whole or in
part, they were authorized to apply the residuary estate, in whole
or in part, to other charitable, educational, and scientific purposes.
These two clauses, as has already been stated, have been construed
by the court of appeals, and the whole of the thirty-fifth article
has been held to be void, and of no effect. As the purposes for
which the general trust was established could not be carried out,
the trust itself failed, and the heirs at law and next of kin have
been admitted to participate in the residuary estate by reason of
this partial intestacy of the deceased.

It is urged, however, that the general trust should still be re-
garded as continuing for the purpose of supporting the charge
created for the protection of the special trusts from depletion. I
do not think, however, that this is a tenable position. The inten-
tion of the testator in the creation of the general trust was to car-
ry out the provision he had made for a disposition of the bulk of
his property for charitable purposes. The provision for the pro-
tection of the special trusts was a subordinate incident to the gen-
eral plan. It was to be carried out while the executors themselves

had the property in their hands, and before they had finally devoted it to the general purposes to which it was intended to be applied. When they had fully executed the trust, and had parted with the estate, the charge in question shifted to the grantee or grantees, provided—and here the subordinate and incidental nature of the provision is again made plain—provided such grantee or grantees should be authorized by law to accept the property subject to such an obligation. Should they not be so authorized, no further provision is made by the testator to meet the case. It was not, therefore, the intention of the testator that under all circumstances, and at all events, his general estate should, during the continuance of the special trusts, remain responsive to the charge. In certain contingencies such was to be the case; in others it was possible that at least within a year after the death of the testator the power would cease. These provisions, therefore, holding as they do this subordinate and incidental relation to an entire scheme, associated as they are with a trust which we may not assume would have been created in the entire residuary estate for the purpose of protecting these special trusts, have necessarily fallen with the main purpose for which the trust was created, and the executors and trustees have become accountable to the next of kin of the testator for the whole of the residuary estate; not by virtue of any provision contained in the will, but under the general law, by reason of the intestacy of the deceased with respect to this portion of his property. They necessarily took it discharged of any conditions attached to the performance of the trust, which never had a valid inception. The power contained in the twenty-fifth article was to be exercised, as the testator declares, "so long as the general trust to my executors and trustees shall continue"; and, as such general trust never had any valid inception, the conditions under which the power may be exercised do not exist. The executors and trustees have constituted the trust, and the same is now operative, and no other or further duty is imposed upon them than to administer it as it now stands. It is highly probable that, if the testator had apprehended that the purposes to which he devoted his general estate would be held to be invalid, he would have made some provision to meet the demands of the twenty-fifth article which would have been proportioned to its requirements, or that he would have constituted these special trusts differently. This, however, has not been done, and the court cannot undertake to devise a scheme which will supply such a deficiency, or make another will for the testator, however probable it might appear that such an interpolation would have been adopted by him. Nor can it subject the rights of the next of kin, which exist independently of the will, to any limitation or abridgment. The care with which the testator separated his general estate and the general trust, so called, from the special trusts, appears with great clearness from the will. The residuary estate is given in terms as a devise and bequest of "all the rest and residue of all the property, real and personal, of whatever name or nature, and wheresoever situated,

of which I may be seised or possessed, or to which I may be enti-
tled, at the time of my decease, which may remain after institut-
ing the several trusts for the benefit of specific persons, and after
making provision for the specific bequests and objects as herein
directed." It thus in the broadest manner excludes these special
trusts from the operation and effect of the general trust, subject-
ing the residuary estate, in the contingency and upon the condi-
tions before mentioned, to the burden of the charge only so long
as the general trust should continue.

The question will now be considered whether the executors and
trustees of the special trust created for the benefit of Mrs. Mary
B. Pelton and the defendant Laura P. Hazard in the premises No.
38 West Thirty-Eighth street, in this city, have power to sell the
same for the purpose of changing the nature of the investment.
The contention of Mrs. Hazard, the sole beneficiary living, is that
there is no such power. In addition to the provisions made under
the ninth clause of the will for their benefit, to which reference
has already been made, the testator in the same article constituted
a further special trust in the following terms:

"I hereby direct my said executors and trustees to allow my sister, Mrs. Mary
B. Pelton, during her natural life, the use of the house No. 38 West Thirty-
Eighth street, in the city of New York. I also direct them to pay any mort-
gage to which the said premises may be now subject. * * * Upon the decease
of my said sister, Mary B. Pelton, the house known as 'No. 38 West Thirty-Eighth
street, in the city of New York, shall be applied to the use of my grandniece
Laura A. Pelton for the remainder of her natural life. * * * Upon the de-
cease of the said Laura A. Pelton, if she leave issue, the said house No. 38 West
Thirty-Eighth street, designated as the first trust, and the principal of the said
second trust, being fifty thousand dollars, shall be paid over to the heirs of her
body. If she leave no issue, the principal of said first trust, being of the said
house No. 38 West Thirty-Eighth street, shall be paid over as she may by her last
will and testament direct."

There is, further, what seems to be a limitation over of this prop-
erty in the event of the death of Mrs. Hazard without leaving issue,
and without having made a testamentary appointment of the prop-
erty, to which it is unnecessary to refer. Standing by itself, it is
obvious that under this article no power whatsoever is vested in
the executors or trustees to sell the property during the lifetime
of Mrs. Hazard. The words used by the testator in providing for
its disposition after the death of Mrs. Hazard, viz. that the real
estate "shall be paid over," while inapt as a description of a trans-
fer of title to real estate, probably means nothing more than that
such real estate shall devolve upon her devisees; and, if any in-
ference at all might be permissible that the testator intended thus
to dispose of the proceeds, and not of the property itself, and that
there was, therefore, an implied power of sale over the real estate,
such power could be exercised only after the death of Mrs. Hazard,
and when the occasion arose for disposing of the subject-matter
of the trust. I do not think that the intention to confer such a
power can properly be found in the provisions of the eighth arti-
cle of the will, to which reference has already been made. There,
it will be remembered, the executors and trustees of the special

trusts were generally authorized, among other things, "to sell, in their discretion, the securities, and to reinvest the proceeds thereof." It is plain that the testator was here referring solely to personal property, of which most of the special trusts consisted. The context of the article under which the real property in question was disposed of certainly indicates a purpose to devote it, to a certain extent at least, to the personal use of his beneficiaries. The direction which he gives that his sister, Mrs. Pelton, be allowed the use of the house, indicates this, and so far, at least, tends to exclude the idea of an intention that it should be the subject of sale at the discretion of his executors and trustees.

The only provision of the will apparently under which a power to sell real estate is directly conferred is found in the thirty-eighth article, which follows that under which the testator directs the disposition of his residuary estate for charitable purposes. Taking into account its location in the will,—which, while in no sense controlling, is still worthy of some consideration,—it may fairly be inferred from its context that the powers thereby conferred were intended to be exercised in the main with respect to the residuary estate, and in furtherance of the objects and purposes of the general trust. The testator owned other real estate than that which he had specifically devised. The importance, therefore, of the existence of the power to sell with respect to such property is plain, in order to enable the executors and trustees to realize upon all of the residuary estate, and to convert the same into money, in order to make a feasible, or at least convenient, application of the property to the charitable purposes for which it was intended. The powers contained in the article in question are stated in three paragraphs, which read as follows:

"(1) To manage the funds herein directed to be invested in the trusts for specific persons until such investments shall have been made, with like authorities as in cases of other portions of my estate.

"(2) To sell and dispose, from time to time, in their discretion, of such parts and parcels of the real estate and other property hereby devised, given, and bequeathed to them as they shall deem advisable; and so to sell and dispose of the same at public or private sale, at such price or prices and upon such terms as to mode, time, and security of payment as they shall deem proper; and to sign, seal, execute, and deliver all proper and necessary conveyances therefor.

"(3) From time to time to invest and reinvest all moneys belonging to my estate, whether derived from sales of said devised and bequeathed property or otherwise, in such manner as they may deem expedient, subject, however, to the same trusts upon which said moneys or property were originally held by my said executors and trustees."

The first paragraph, it will be observed, refers to the special trusts alone, and makes provision for the management of the funds appropriated for their benefit until the investments shall have been made in which the corpus of the trust estate was to be embodied. In other words, it relates to conditions before the practical formation of the fund upon which the trust is to operate, and refers rather to the performance of executorial duties in establishing the trust than to the powers and authorities appertaining to the execution of the same after it is established. The remaining para-

graphs, if what I conceive to be the general intention of the testator is to be strictly followed, relate, as I have already intimated, to the performance of duties with respect to property which had not been specifically appropriated for special purposes under the will, or to the residuary estate embraced in the general trust. Had the testator intended to confer such a power upon his executors and trustees with respect to the real estate appropriated for the benefit of Mrs. Pelton and Mrs. Hazard, he would doubtless have expressed such a purpose, either in the clause of the will which disposes of this property, or in the eighth and twenty-ninth articles, which exclusively relate to the general powers which he intended that the trustees of all the special trusts created by him should possess and exercise. We must carefully bear in mind, in considering this will, the complete separation which the testator intended to make of the special trusts, so called, from the general trust which concerned his residuary estate. His intention in dealing with them was to make each class independently complete, and for that purpose to define and distribute with respect to each class of trusts the powers which he deemed to be appropriate, and which he desired his executors and trustees to possess with reference to each; and, while the question may not be free from doubt, I have come to the conclusion that the power to sell real estate contained in this article should be regarded as applicable to real property other than that which is the subject of any of the special trusts which he has created. This construction at least is consistent with the general intention which, I think, plainly appears, that where specific property has been devoted by the testator to the purposes of a special trust, it should not be subject to alienation by the trustees during the continuance of the trust.

There remains one other question to be disposed of, arising under the fifteenth article of the will. This articles relates to the acquisition by the executors and trustees of certain family property at New Lebanon, and the application of the same to the use of the testator's nephews the defendants George H. Tilden and Samuel J. Tilden, Jr., for their lives, upon whom also a power of appointment by will with respect to the same is conferred. The provision is loosely drawn, suggesting rather the outline of a testamentary scheme, the details of which had not been worked out. The central idea, however, is that, as the property is associated with the family name, it should be kept together in the ownership of members of the family, and to that end the devise for the benefit of the two nephews was accordingly made. Various theories have been suggested with respect to the exact nature of the interests, powers, and estates which the beneficiaries were intended to take, none of which is free from some objection. A discussion of the subject at length would serve no useful purpose. I have accordingly decided to adopt the construction advocated by the learned counsel for these defendants, who, after all, are substantially the only persons interested, whatever view may be taken as to the real meaning of this article. I do not think that the testator intended

to create an active trust in his executors and trustees with respect to the property during the lives of the beneficiaries, as that would impose limitations upon its use by them which would hardly be consistent with the general object of the provision. This is not so inconsistent with the language of the will as to do violation to its terms, the direction being not to hold and apply the income of the property to the use of the beneficiaries, but to apply the property itself to their use for life. The conclusion, then, is that the defendants George H. Tilden and Samuel J. Tilden, Jr., have estates for life as tenants in common in the premises, with cross remainders for life (Purdy v. Hayt, 92 N. Y. 446), contingent upon the failure of the one first dying to exercise the power of appointment by will with respect to the undivided half of the property to which his estate for life attaches. Each has a power of appointment with respect to an undivided half of the property, and, in default of an exercise of such power by the one first dying, the survivor may appoint the whole estate by will.

Judgment is awarded accordingly, with costs to all parties payable out of the fund.